**Jacob ANTHONY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–94–00382–CR.**

Court of Appeals of Texas,
San Antonio.

Sept. 24, 1997.

and remand the case for a new trial in accordance with this opinion.

In his sole point of error, Appellant asserts that the trial court[2] erred in denying the motion to suppress his statement as it was obtained in violation of Appellant's constitutional and statutory rights. More specifically, Appellant contends that his statement was obtained in violation of Texas Family Code sections 52.02 and 52.025, requiring that juveniles be detained and processed in specifically designated facilities.

Appellant was taken into custody and gave a statement under the following fact scenario: Appellant arrived at Southeast Baptist Hospital with gunshot wounds at about 1:15 a.m., shortly after a gang-related shooting was reported in the area. Officers were on alert that one of the participants in the shooting may have been injured. Officer Pelfrey of the San Antonio Police Department found Appellant at the hospital about 2:00 a.m. and questioned him regarding his injury. Because Officer Pelfrey noticed a large bulge in Appellant's pocket, he was concerned that Appellant might have a weapon. Therefore, he frisked Appellant and found five shotgun shells. The officer was aware that different gauge shotguns had been used in the shooting. Appellant was read his rights after the shotgun shells were found, but before he was taken into custody.

After Appellant was treated for his injuries and released from the hospital, Officer Pelfrey took him into custody and transported him to the gang unit at the downtown police station. Officer Pelfrey testified that he did not know if the gang unit had been designated as a juvenile processing area.

When Appellant indicated that he wanted to give a statement, Sergeant Celaya took him to Magistrate Quintanilla to be informed of his rights. Sergeant Celaya testified that he took Appellant's statement just after 5:00 a.m. in the homicide office at the police station downtown. He read Appellant his rights and Appellant signed a card indicating that he understood his rights. After Appel-

Michael D. Bernard, Hitchings, Pollock & Bernard, San Antonio, for Appellant.

Daniel Thornberry, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before HARDBERGER, C.J., and LÓPEZ and STONE, JJ.

## OPINION

LÓPEZ, Justice.

We grant Appellant's motion for rehearing, withdraw our opinion of March 26, 1997, and substitute this opinion in its place.

Appellant, Jacob Anthony, was indicted for the offense of murder. Pursuant to a plea agreement, the trial court sentenced Appellant to fifty years confinement. This appeal challenges only the trial court's ruling on Appellant's motion to suppress evidence. We reverse the judgment of the trial court

---

2. The motion to suppress was heard by Criminal Magistrate Andrew M. Carruthers who entered findings of fact and conclusions of law.

lant gave Celaya his statement, Celaya took Appellant to Magistrate Cate to go over the statement with Appellant. Sergeant Celaya testified that Appellant gave his statement voluntarily.

Magistrate Quintanilla testified that he correctly informed Appellant of his rights and that Appellant and two witnesses signed the warning form. The magistrate verified that Appellant had understood and waived his rights voluntarily when he signed the warning form. Magistrate Quintanilla explained that Appellant was brought into the courtroom, a secured area, where detainees are magistrated. Only the magistrate, Appellant, and two witnesses were present with Appellant in the courtroom. The magistrate was not aware of any special designation making his courtroom a juvenile processing office. He was not aware of the juvenile court designating him as an official.

A clerk in the magistrate's office testified regarding the process when a child gives a statement. He verified that Magistrate Cate read Appellant his rights regarding Appellant's written statement, Appellant read the statement and signed it voluntarily. The clerk and another court employee then wit-

nessed Appellant's signature on the statement.

■ At a hearing on a motion to suppress, the trial court is the sole trier of fact and judges the credibility of the witnesses. *DuBose v. State*, 915 S.W.2d 493, 496 (Tex. Crim.App.1996). The trial court's decision is upheld absent a showing that the trial court abused its discretion. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

Texas Family Code section 51.09 addresses the proper procedure for obtaining juvenile statements. TEX. FAM.CODE ANN. § 51.09(b) (Vernon 1996). A juvenile statement is admissible as evidence if "when the child is in a detention facility or other place of confinement or in custody of an officer, the statement is made in writing and the statement shows that the child has at some time prior to making thereof received from a magistrate a warning...." TEX. FAM.CODE ANN. § 51.09(b)(1) (Vernon 1996). Appellant does not argue that the statement was taken in violation of section 51.09.

■ An officer detaining a juvenile must comply with each of the provisions of the Family Code, including section 52.02[3] and 52.025[4]. *Cf. Comer v. State*, 776 S.W.2d 191,

---

3. TEX. FAM.CODE ANN § 52.02 (Vernon 1996):

Release or Delivery to Court

(a) A person taking a child into custody, without unnecessary delay and without first taking the child to any place other than a juvenile processing office designated under Section 52.025 of this code, shall do one of the following:

(1) release the child to a parent, guardian, custodian of the child, or other responsible adult upon that person's promise to bring the child before the juvenile court as requested by the court;

(2) bring the child before the office or official designated by the juvenile court if there is probable cause to believe that the child engaged in delinquent conduct or conduct indicating a need for supervision;

(3) bring the child to a detention facility designated by the juvenile court;

(4) bring the child to a medical facility if the child is believed to suffer from a serious physical condition or illness that requires prompt treatment; or

(5) dispose of the case under Section 52.03 of this code;

(b) A person taking a child into custody shall promptly give notice of his action and a statement of the reason for taking the child into custody, to:

(1) the child's parent, guardian, or custodian; and

(2) the office or official designated by the juvenile court.

4. TEX. FAM CODE ANN. § 52.025 (Vernon 1996):

Designation of Juvenile Processing Office

(a) The juvenile court may designate an office or a room, which may be located in a police facility or sheriff's offices, as the juvenile processing office for the temporary detention of a child taken into custody under Section 52.01 of this code. The office may not be a cell or holding facility used for detentions other than detentions under this section. The juvenile court by written order may prescribe the conditions of the designation and limit the activities that may occur in the office during the temporary detention.

(b) A child may be detained in a juvenile processing office only for:

(1) the return of the child to the custody of a person under Section 52.02(a)(1) of this code;

(2) the completion of essential forms or records required by the juvenile court or this title;

(3) the photographing and fingerprinting of the child if otherwise authorized at the time of temporary detention by this title;

(4) the issuance of warnings of the child as required or permitted by this title; or

196 (Tex.Crim.App.1989). Violation of these statutes renders illegally obtained evidence inadmissible. *Cf. Comer,* 776 S.W.2d at 195; *In re D.Z.,* 869 S.W.2d 561, 565 (Tex.App.— Corpus Christi 1993, writ denied).

■ A designation by the juvenile court of a particular city police station is enough to satisfy section 52.025(a). *See Smith v. State,* 881 S.W.2d 727, 732 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd); *cf. Jacobs v. State,* 681 S.W.2d 119, 123–24 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd). In *Smith,* the court found that the officers complied with section 52.025(a) because the juvenile was taken to the police station that had been specifically designated under section 52.025(a) and was given warnings by an officer also designated under section 52.025(a). *Smith,* 881 S.W.2d at 732. The appellant in *Smith* was taken to the juvenile division in the police station and a juvenile division officer was present during the interview. *Id.* at 730.

■ State's exhibit 1A is an order signed by Judge Tom Rickhoff, as juvenile court judge, on March 8, 1988, designating the "PLACES OF LAW ENFORCEMENT CUSTODY FOR JUVENILES." The list includes "the offices, officials and places" of "The San Antonio Police Department" and "The Magistrates of Bexar County." Under the prior language of section 52.02(a)(2) that was in effect when the order was issued, the juvenile court was allowed to designate places in the county where a juvenile could be taken for processing. *See* Act of Sept. 21, 1991, 72d Leg., R.S., ch. 495 § 1, 1991 Tex. Gen. Laws 1738, 1739; *see generally* Robert O. Dawson, *Delinquent Children and Children in Need of Supervision,* 21 TEX. TECH L.REV. 1747, 1795 (1990).

Section 52.02 was amended in 1991 and section 52.025 was added. Act of Sept. 21, 1991, 72d Leg., R.S., ch. 495, § 1, 1991 Tex. Gen. Laws 1738, 1738–39. The new section clarified how the juvenile court may designate additional offices for processing juveniles and what procedures can take place at

those offices. TEX. FAM.CODE ANN. § 52.025 (Vernon 1996). The record does not contain any subsequent order from the juvenile court designating any juvenile processing offices pursuant to the 1991 amendment to section 52.02 and new section 52.025. Therefore, we must decide whether the 1988 order, under which Appellant's statement was taken, comports with the Family Code.

In construing the Family Code, we must consider both the purpose of protecting and insulating children as well as the need for community safety. *See* TEX. FAM.CODE ANN. § 51.01 (Vernon 1996). The purpose for development of a separate juvenile system was to help and rehabilitate children rather than to punish them for criminal actions. *See generally* Douglas A. Hager, *Does the Texas Juvenile Waiver Statute Comport with the Requirements of Due Process?,* 26 TEX. TECH L.REV. 813, 815, 819 (1995).

The State introduced the order from the juvenile court designating both the offices of the San Antonio Police Department and the magistrates' offices as juvenile processing areas. The specific language of section 52.025, however, described an "an *office* or *room,* which may be located *in* a police facility or sheriff's offices. . . ." TEX. FAM.CODE ANN. § 52.025 (Vernon 1996) (emphasis added). This language does not contemplate use of an entire department or station. Furthermore, the statute also prohibits use of cells or holding facilities not designated exclusively for juveniles. *Id.*

■ Unlike the facts in *Smith,* the record before us reveals that Appellant's statement was taken in the homicide office of the police station, not an exclusive juvenile area, without a juvenile officer present. *See Smith,* 881 S.W.2d at 732.

In considering the 1988 order, we find that the general designation of police stations and magistrates' offices is proper. *See* TEX. FAM. CODE ANN. § 52.025 (Vernon 1996); *Smith,* 881 S.W.2d at 732. However, a literal interpretation of the order would allow an officer

---

(5) the receipt of a statement by the child under Section 51.09(b) of this code.
(c) A child may not be left unattended in a juvenile processing office and is entitled to be accompanied by the child's parent, guardian, or other custodian or by the child's attorney.
(d) A child may not be detained in a juvenile processing office for longer than six hours.

to take a statement or process a juvenile in any facility or area of the police station. This procedure does not supply the child with protection against the stigma of criminality or exposure to adult offenders. *See Comer,* 776 S.W.2d at 193. The police station must use an area designated exclusively for processing juveniles.

Because the officers did not contact a juvenile officer or take the required step of processing Appellant in an area specifically utilized for juveniles, Appellant's statement was taken in violation of the Family Code. *See* TEX. FAM.CODE ANN. §§ 52.02, 52.025 (Vernon 1996). Therefore, the statement was obtained illegally and cannot be admitted to support a criminal conviction. TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp. 1997); *cf. Smith,* 881 S.W.2d at 731. We find that the trial court abused its discretion in overruling Appellant's motion to suppress the statement.

We must next determine whether the use of Appellant's statement to support the plea conviction violated his Fifth Amendment rights. Where a defendant's confession is material to the validity of a guilty plea, the appellate court is required to review the merits of a defendant's motion to suppress that confession. *McKenna v. State,* 780 S.W.2d 797, 800 (Tex.Crim.App.1989). Previously, an appellate court could apply a harmless error analysis and consider evidence independent of a judicial confession to support a guilty or *nolo contendere* plea. *See Johnson v. State,* 722 S.W.2d 417, 423–424 (Tex. Crim.App.1986). This rule, however, was subsequently reversed by the Court of Criminal Appeals in *McKenna v. State. McKenna,* 780 S.W.2d at 800.

The application of a harmless error analysis is misplaced because the existence of a judicial confession or tainted evidence, which has been found to be inadmissible for trial, can "somehow [be] used" by the State to the detriment of the appellant. *See Kraft v. State,* 762 S.W.2d 612, 614 (Tex.Crim.App. 1988) (citing *McGlynn v. State,* 704 S.W.2d 18 (Tex.Crim.App.1982)). An example of how this evidence can be "used against" the defendant is in the plea bargaining process. "'[T]he more relevant evidence Appellant

knows could be marshalled against him, the more preferable would appear his option to relinquish constitutional rights of trial and confrontation in exchange for a favorable punishment recommendation.'" *McKenna,* 780 S.W.2d at 799 (quoting *Kraft,* 762 S.W.2d at 614). It is the use of evidence, sought by the appellant to be suppressed, that violates the Appellant's Fifth Amendment rights. *Kraft,* 762 S.W.2d at 615. In applying a harmless error analysis, the court would be speculating that the evidence which Appellant did not seek to suppress would have inevitably led to a conviction after trial. *Id.* In doing this, the court would effectively be denying the appellant the right to decide whether to plead or move forward to a trial. *Id.*

The circumstances addressed by the Court of Criminal Appeals in *McKenna* and *Kraft* are similar to the case at bar. Based on the relevant case law, the court is unable to apply a harm analysis to the circumstances of the present case. It is irrelevant whether sufficient independent evidence existed to support Appellant's guilty plea. Therefore, witness statements alleging the appellant's intended participation to "go do the drive-by shooting" cannot be considered to support Appellant's guilty plea. Furthermore, the existence of an eye witness who identified the appellant as a participant with a weapon in the shooting cannot be considered.

The issue in this case, as Appellant asserts, is whether the existence of the illegal confession was somehow used against the appellant by the State. In the present case, the appellant pled guilty to murder only after his motion to suppress was overruled. In addition, the appellant stipulated to evidence and consented to the introduction of offense reports after the motion was overruled. With the cards stacked against him, the appellant was left with no choice but to enter into the plea bargaining process and forego trial. Based on the record, we conclude that the existence of Appellant's illegally obtained statement contributed to the State's leverage during the plea bargaining process. Accordingly, we hold that the use of the appellant's statement taken in violation of the Family

Code was used against him in violation of his Fifth Amendment rights.

We find that the trial court abused its discretion in overruling Appellant's motion to suppress the statement. We grant Appellant's motion for rehearing. We reverse the judgment and remand the case for a new trial in accordance with this opinion.