David ALMAGUER, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–96–178–CR.

Court of Appeals of Texas,
Corpus Christi.

Oct. 30, 1997.

and sentenced him to five years in prison and a $5,000.00 fine. By a single point of error, appellant challenges the conviction on the ground that the trial court committed reversible error in denying his motion to suppress his oral statements. We affirm.

Appellant was arrested in the house where he lived with his wife, their children, and his mother-in-law. On August 5, 1994, undercover Corpus Christi police officers Charles Bartels and Jeff Mills were dispatched to observe the residence after an anonymous tip to police complained of drug trafficking out of the house. Having observed numerous vehicles arrive and depart from the house over a short period of time, Bartels and Mills decided to knock on appellant's door and report the complaint from the anonymous tip. The officers did not believe they had probable cause to obtain a search warrant, but were convinced they had reasonable suspicion that appellant was selling drugs from his home.

They walked to the front door of appellant's home, where they announced themselves as police and conveyed their suspicions that appellant was selling drugs from the home. What transpired next was disputed at the suppression hearing, but appellant does not dispute that he allowed the officers to enter his house. Inside the house, appellant admitted that he had illegal drugs, then signed a consent form allowing the police to search the house for the illegal drugs. At the suppression hearing, appellant maintained that his statement admitting that he had drugs should have been suppressed because it resulted from a custodial interrogation which was conducted without any *Miranda* warnings [2] having been given.

Bill May, Corpus Christi, for Appellant.

Carlos Valdez, District Attorney, James D. Rosenkild, Assistant District Attorney, Corpus Christi, for State.

Before SEERDEN, C.J., and YANEZ and CHAVEZ, JJ.

## OPINION

YANEZ, Justice.

David Almaguer was indicted for the offense of possession of between 28 and 400 grams of cocaine.[1] After a bench trial, the trial court found him guilty of the offense

### Standard of review

A trial court has broad discretion in determining the admissibility of evidence, and we will not reverse absent a clear abuse of discretion. *Allridge v. State*, 850 S.W.2d 471, 472 (Tex.Crim.App.1991). A trial court's

1. Tᴇx. Hᴇᴀʟᴛʜ & Sᴀꜰᴇᴛʏ Cᴏᴅᴇ Aɴɴ. § 481.115 (Vernon Supp.1997). We cite to the current version of the statute because any changes made subsequent to appellant conviction are immaterial for purposes of this appeal.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ruling on a motion to suppress will not be set aside absent a showing of abuse of discretion. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex. Crim.App.1985); *State v. Tipton*, 941 S.W.2d 152, 154 (Tex.App.—Corpus Christi 1996, pet. ref'd). When we review a trial court's ruling on a motion to suppress evidence, we are not at liberty to disturb any finding which is supported by the record. *Green v. State*, 615 S.W.2d 700, 707 (Tex.Crim.App. 1980); *Tipton*, 941 S.W.2d at 154. The appellate court should not engage in its own factual review but should decide whether the trial judge's fact findings are supported by the record. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Tipton*, 941 S.W.2d at 154. The trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony at a hearing on a motion to suppress. *Id.*

▉ Bartels testified that, when they knocked on the door, appellant answered. Bartels said the officers identified themselves as policemen, and asked if they might be allowed inside. Appellant let them into the house. Once inside, the officers asked that everyone come into the living room. Bartels said that when he explained they were at the residence because of reported narcotics trafficking, appellant hung his head, then said, " Yeah, I've got it."

At that point, according to Bartels's testimony, he requested consent to search the house. He explained to appellant that he did not have to give consent and could order them to leave and obtain a search warrant instead. Both Bartels and Mills testified that appellant agreed to give consent, and actually signed a consent form before showing the officers where his drugs were stored. The officers admitted that they did not, at any point prior to his arrest, read appellant his *Miranda* warnings.

By his sole point of error, appellant contends that the court erred in denying his motion to suppress an oral statement made in response to a custodial interrogation which was conducted prior to *Miranda* warnings being read. He contends that he was being subjected to a custodial interrogation when the officers entered the house and asked that

appellant's family be brought to the livingroom of the house. He contends that the "knock and talk" investigative technique utilized by the officers, together with their accusatory statements, were designed to elicit incriminating responses, and therefore any statements resulting from this technique should have been suppressed under article 38.23 of the Texas Code of Criminal Procedure. Article 38.23 states, "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX.CODE CRIM. PROC. ANN. art 38.23(a) (Vernon 1979). Because we do not believe that appellant's oral admission that he was in possession of drugs was the result of a custodial interrogation, as appellant maintains, we cannot say that the court erred in denying appellant's motion to suppress.

## Custodial Interrogation

▉ Any statement given freely and voluntarily without any compelling influences is admissible in evidence. *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966); *DeLeon v. State*, 758 S.W.2d 621, 625 (Tex.App.—Houston [14th Dist.] 1988, no pet.). Indeed, confessions are a proper element in law enforcement. *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1630. The defendant bears the burden of demonstrating that statements which the defendant seeks to suppress were made while the defendant was under custodial interrogation. *U.S. v. Charles*, 738 F.2d 686, 692 (5th Cir.1984); *DeLeon*, 758 S.W.2d at 625.

▉ If an investigation is not at an accusatorial or custodial stage, a person's Fifth Amendment rights have not yet come into play and the voluntariness of those rights is not implicated. *Melton v. State*, 790 S.W.2d 322, 326 (Tex.Crim.App.1990); *Garza v. State*, 915 S.W.2d 204, 211 (Tex.App.— Corpus Christi 1996, pet. ref'd). A person is in "custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest.

*Stansbury v. California*, 511 U.S. 318, 322–24, 114 S.Ct. 1526, 1528–30, 128 L.Ed.2d 293, 298–99 (1994); *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App.1996). The determination of custody must be made on an ad hoc basis, after considering all of the objective circumstances. *Dowthitt*, 931 S.W.2d at 254; *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex.Crim.App.1985).

Appellant cites four factors which have traditionally been considered in determining whether a person is in custody: (1) whether there was probable cause to arrest, (2) the subjective intent of the police, (3) whether defendant was the focus of the investigation, and (4) the subjective belief of the defendant. *Meek v. State*, 790 S.W.2d 618, 621–22 (Tex.Crim.App.1990). Under *Stansbury*, however, factors two and four have become irrelevant except to the extent that they may be manifested in the words or actions of law enforcement officials. 511 U.S. at 323–24, 114 S.Ct. at 1528–29, 128 L.Ed.2d at 298. Now, the custody determination is based entirely upon objective circumstances. *Id.* "The only relevant inquiry is how a reasonable man in the suspect's shoes would have understood his situation." *Stansbury*, 511 U.S. at 332–24, 114 S.Ct. at 1529–30 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151–52, 82 L.Ed.2d 317 (1984)). As the Supreme Court explained in *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), this reasonable person standard "ensures that the scope of 4th Amendment protection does not vary with the state of mind of the particular individual being approached." 486 U.S. at 574, 108 S.Ct. at 1980.[3]

In *Dowthitt*, the Texas Court of Criminal Appeals noted four general situations which may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. 931 S.W.2d at 255; *Shiflet*, 732 S.W.2d at 629. The *Dowthitt* Court wrote,

Concerning the first through third situations, *Stansbury* indicates that the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention. Concerning the fourth situation, *Stansbury* dictates that the officers' knowledge of probable cause be manifested to the suspect. Such manifestation could occur if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers. Moreover, given our emphasis on probable cause as a "factor" in other cases, situation four does not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.

*Dowthitt*, 931 S.W.2d at 255.

According to the officers' testimony at the suppression hearing, they asked whether

**3.** It has been recited recently that the "reasonable person standard presupposes a reasonable *innocent* person." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim.App.1996) (citing *Florida v. Bostick*, 501 U.S. 429, 438, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389, 400–01 (1991)); *see also Vessels v. State*, 938 S.W.2d 485, 488 (Tex.App.—El Paso 1996, no pet.). We are reluctant to categorically interject into our custody analysis the "guilt" or "innocence" of a person subjected to questioning by law enforcement officers, particularly in light of the Supreme Court's insistence on focusing on objective factors in determining whether a custodial interrogation occurred. The consideration of the subject's "guilt" or "innocence" diverges from the factors the court indicates we are to consider, and instead focuses on the particular subjective thoughts of the subject. We also consider the distinction unhelpful because we cannot say that an innocent person is categorically likely to have a different perception as a guilty person with respect to whether he or she is being "detained" or merely questioned. For this reason, we will not factor the subject's "guilt" or "innocence" into our determination of a custody issue unless a party attempts to argue that his or her guilt affected his or her subjective understanding of the situation. This approach appears to be consistent with that of the Supreme Court. *See Bostick*, 501 U.S. at 437–39, 111 S.Ct. at 2388.

they might be permitted inside the home, but did not raise their voices or threaten appellant in any way to gain entry. According to their testimony, once inside, the officers asked if the entire household could come into the front room. Once everyone was present, they simply voiced the reason for their presence, and did not make any inquiry before appellant hung his head and said, "I've got it." Prior to that point, they had not confirmed their suspicions that appellant was then in possession of illegal drugs.

Appellant testified that the police officers, when they arrived at his door, told him they suspected appellant was trafficking out of the house and asked if he would allow them inside. Appellant said he asked whether they had a search warrant, and the officers replied that they could obtain one. Appellant next testified that the officer told him that he could either sign a consent form to search the house, or, if he refused, the officer would come back and arrest appellant's wife, his mother in law, and his three children and take them to jail. Appellant said this scared his family, so he allowed the officers into the house. Appellant then sat down, told the officers he did have some drugs, then signed the consent form. If believed, appellant's testimony suggests that the only reason the officers were allowed to enter the house was because they coerced appellant into giving them consent to enter.[4]

Based on the evidence presented at the suppression hearing, we find no reversible error in the court's ruling. The trial court was entitled to believe the officers' version of the facts and disbelieve that of appellant. Two police officers testified that they requested permission to enter the house, obtained such permission, and never threatened appellant in any way. The officers testified that appellant volunteered to them that he was in possession of illegal drugs, and voluntarily consented to their search of the house. Appellant's sole point of error is overruled.

4. We note, however, that a court will not invalidate a consent to search merely because an officer told a defendant that he would get a warrant if the defendant did not consent. *Resendez v.*

The judgment of the trial court is AFFIRMED.

*State,* 523 S.W.2d 700, 703 (Tex.Crim.App.1975); *Williams v. State,* 937 S.W.2d 23, 28–29 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).