No. 04-98-00230-CR



Kenneth Dashaun WILLIAMS,


Appellant



v.



The STATE of Texas,


Appellee



From the 175th Judicial District Court, Bexar County, Texas


Trial Court No. 97-CR-0279


Honorable Mary Román, Judge Presiding



Opinion by: Tom Rickhoff, Justice


Sitting: Tom Rickhoff, Justice

 Paul W. Green, Justice

 Karen Angelini, Justice


Delivered and Filed: May 19, 1999


AFFIRMED


 Kenneth Dashaun Williams was convicted of murder and sentenced to imprisonment for
thirty years. He appeals, raising six points of error. We affirm. 

Facts


 The State presented evidence that Robert Robinson was shot and killed with a .22 caliber 
revolver on June 22, 1996. Ten days later, the revolver used in the murder was thrown out of a
stolen car when the police attempted to pull the car over. One of the occupants of the car was Robert
Earl Haynes. Cedric Haynes testified that on the evening of June 22, 1996, he saw Williams and
Robert Earl Haynes handling the revolver that was used in the murder. Terrick Alsbrooks testified
that he went "riding around" with Williams and Robert Earl Haynes on the evening of the murder. 
Williams was driving, Haynes was in the front passenger seat, and Alsbrooks was in the back seat.
While they were stopped at a red light, a car pulled up behind them with its bright lights on. 
Williams ran the red light, and the car continued to follow them for a while. Eventually, Williams
managed to get behind the car that had been following them. Alsbrooks testified that as their car
approached the other car, he heard Williams say "[s]hoot him" and saw Haynes fire a shot at the
other car. When the three were splitting up later that evening, Williams warned Alsbrooks not to
say anything about what had happened. 

 A written statement made by Williams was admitted into evidence. In the statement,
Williams said that he and Haynes left the Cameo Theater that evening in a "two-seater" rental truck. 
A car approached them with its bright lights on. Williams tried to get away from the other car
because he thought it might contain some people who want to kill him. When he stopped briefly at
a red light, Haynes jumped out and started shooting at the other car. After Haynes got back in the
car, Williams saw that he had a gun, which Williams believed to be a .38 caliber. According to the
statement, Williams "didn't know [Haynes] had a gun in the car. If I'd known there was a gun in
the car, I wouldn't have ran. We would have had a shoot-out right there." 

 At trial, Williams testified that he was actually driving a four-door car, rather than a truck,
and Albrooks and another person were also in the car with him and Haynes. He claimed that he did
not mention these other people in his written statement to protect them, since he and the other people
had "nothing to do with it, when Robert Earl acted on his own." 

Suppression of Written Statement


 In his first point of error, Williams argues that the trial court erred by admitting his written
statement into evidence because he made the statement in an office that was not specifically
designated for processing juveniles. 

 At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility
of the witnesses and the weight to be given their testimony. See Villarreal v. State, 935 S.W.2d 134,
138 (Tex. Crim. App. 1996); In re L.R., 975 S.W.2d 656, 658 (Tex. App.--San Antonio 1998, no
pet.). Consequently, we view the evidence in the light most favorable to the trial court's ruling and
afford almost total deference to its findings if they are supported by the record. See Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997); In re A.D.D., 974 S.W.2d 299, 305 (Tex. App.--San
Antonio 1998, no pet.). When the resolution of the suppression issue does not turn upon an
evaluation of credibility or demeanor, we review de novo the trial court's determination of the
applicable law, as well as its application of the law to the facts. See Guzman, 955 S.W.2d at 89; In
re A.D.D., 974 S.W.2d at 305. 

 Because Williams was a juvenile when he made the statement, the Texas Family Code
governs the admissibility of the statement.(1) See Comer v. State, 776 S.W.2d 191, 196 (Tex. Crim.
App. 1989); Smith v. State, 881 S.W.2d 727, 731 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). 
Section 52.02 of the Family Code provides that "a person taking a child into custody, without
unnecessary delay and without first taking the child to any place other than a juvenile processing
office designated under Section 52.025," must release the juvenile, take the juvenile before an
official designated by the juvenile court, or take the juvenile to a detention facility or medical
facility. Tex. Fam. Code Ann. § 52.02(a) (Vernon Supp. 1999) (emphasis added). Section 52.025
allows the juvenile court to "designate an office or a room, which may be located in a police facility
or sheriff's offices, as the juvenile processing office for the temporary detention" of juveniles. Id.
§ 52.025(a) (Vernon 1996). A juvenile may be detained in a juvenile processing office for "the
receipt of a statement by the child ...." Id. § 52.025(b)(5) (Vernon Supp. 1999). 

 We discussed the interplay of these statutes in Anthony v. State, 954 S.W.2d 132 (Tex.
App.--San Antonio 1997, no pet.). In Anthony, the defendant was taken into custody under
suspicion of murder and placed in the gang unit of the San Antonio Police Department. When he
indicated that he wanted to make a statement, a police officer took him to a magistrate, who
explained his rights to him. The police officer then took the defendant to the homicide office of the
police department, where the defendant made a statement. The juvenile court had designated the
police department as a facility for processing juveniles. In considering whether this designation
complied with section 52.025, we held:

 [T]he general designation of police stations and magistrates' offices is proper. 
However, a literal interpretation of the order would allow an officer to take a
statement or process a juvenile in any facility or area of the police station. This
procedure does not supply the child with protection against the stigma of criminality
or exposure to adult offenders. The police station must use an area designated
exclusively for processing juveniles. 


Anthony, 954 S.W.2d at 135-36 (citations omitted). Because the homicide office was not designated
exclusively for processing juveniles, we concluded that the defendant's statement was taken in
violation of the Family Code. See id. at 136. The statement was therefore inadmissible. See id. 

 Viewed in the light most favorable to the trial court's ruling, the record reveals the following
facts related to Williams's statement. Williams was arrested for theft and evading arrest. When he
was arrested, he identified himself as his older brother and provided the police his brother's birth
date. Based on his brother's birth date, the police concluded that Williams was an adult and booked
him into the Bexar County Jail. 

 San Antonio Police Officer Thomas Matjeka suspected that Williams was involved in Robert
Robinson's murder. Upon learning that he was being detained in the Bexar County Jail under his
brother's name, Matjeka went to the jail and asked Williams whether he would be willing to give
a statement concerning what happened on the night of the murder. Williams agreed and was released
to Matjeka's custody. Matjeka took Williams directly to a magistrate's office, and the magistrate
informed him of his rights and gave him the warnings required by the Family Code. See Tex. Fam.
Code Ann. § 51.095(a)(1)(A) (Vernon Supp. 1999). When the magistrate finished with this
procedure, Matjeka took Williams to the Youth Crimes Bureau of the San Antonio Police
Department.(2) As a result of ongoing remodeling, no interview rooms were available at the Youth
Crimes Bureau. Matjeka had intended to use either a sergeant's or a lieutenant's private office
within the Bureau to interrogate Williams, but those offices were locked because the sergeant and
the lieutenant had left for the day. The only remaining area in the Bureau was an "open bay area"
where four or five detectives do their work. Matjeka testified that in that area "other suspects are
being brought in, other juveniles, other adults." Because of the lack of privacy in the bay area,
Matjeka took Williams to the homicide office, where Williams gave his statement. Matjeka testified
that the office was vacant except for him and Williams. In particular, no adult offenders were
present. After the statement was completed, Matjeka took Williams back to the magistrate, Williams
signed the statement in the magistrate's presence, and the magistrate certified that the statutory
requirements had been satisfied and that the statement was voluntary. See id. § 51.095(a)(1)(B)-(D). 
Matjeka then returned Williams to the Bexar County Jail and reported to the jail officials that
Williams needed to be transferred to a juvenile facility. 

 Although Williams, like the defendant in Anthony, gave his statement in the homicide office,
we conclude that this case is distinguishable from Anthony. The purpose for requiring juveniles to
be interrogated in specially designated areas is to protect them from exposure to adult offenders and
the stigma of criminality. See Anthony, 954 S.W.2d at 136. Because no one else was in the
homicide office at the time Williams made his statement, this purpose was fulfilled. To hold that
Williams's statement was inadmissible under these circumstances would be to place form above
substance.(3) We overrule Williams's first point of error.(4) 

Accomplice Witness 


 In his second and third points of error, Williams asserts that Terrick Alsbrooks was an
accomplice witness. Based on this assertion, he argues that the trial court erred by refusing to
include an accomplice witness instruction in the jury charge and that the State failed to present
sufficient evidence corroborating Alsbrooks's testimony. 

 An accomplice witness is someone who participated before, during, or after the commission
of the crime. See Blake v. State, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998); Kunkle v. State, 771
S.W.2d 435, 439 (Tex. Crim. App. 1986). The fact that a witness knew of the crime and failed to
disclose it, or even concealed it, does not make the witness an accomplice. See Blake, 971 S.W.2d
at 454; Kunkle, 771 S.W.2d at 439. Even presence at the scene of the crime does not make a person
an accomplice. See Blake, 971 S.W.2d at 454; Kunkle, 771 S.W.2d at 439. "In order to be an
accomplice witness, there must be some evidence of an affirmative act on the witness' part to assist
in commission of the offense." Kunkle, 771 S.W.2d at 440. 

 In this case, there is no evidence that Alsbrooks committed an affirmative act to assist in
Robinson's murder; he was simply present when the murder was committed. Williams argues that 
Alsbrooks was an accomplice because he testified that the police searched his house, which made
him fear that he might be charged in connection with the murder. We note, however, that there is
no evidence that Alsbrooks has actually been charged; nor is there sufficient evidence in this record
to support a murder charge against Alsbrooks. The mere fact that the police searched his house is
insufficient to make Alsbrooks an accomplice. The court therefore did not err in refusing to include
an accomplice witness instruction in the jury charge and it was not necessary for the State to
corroborate Alsbrooks's testimony. See Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979); 
Gonzales v. State, 681 S.W.2d 270, 274 (Tex. App.--San Antonio 1984, no pet.). We overrule
Williams's second and third points of error.

Sufficiency of the Evidence


 In his fourth point of error, Williams argues that the evidence was legally insufficient to
support his conviction.

 In analyzing the legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict to determine whether a rational jury could have found beyond a reasonable
doubt all the essential elements of the offense charged. See Jackson v. Virginia, 443 U.S. 307, 319
(1979); Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). We are not free to reweigh
the evidence or to determine the credibility of the testimony. See Muniz v. State, 851 S.W.2d 238,
246 (Tex. Crim. App. 1993). When the State relies on the law of parties to establish the defendant's
guilt, the State must prove that the defendant acted with the intent to promote or assist in the
commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid another
person in its commission. See Mares v. State, 801 S.W.2d 121, 127 (Tex. App.--San Antonio 1990,
no pet.). 

 In this case, the jury was charged on the law of parties. The jury was presented with evidence
that Robinson was killed by a bullet from a gun that was thrown out of a car in which Haynes was
riding. The jury could also infer from the evidence that Williams was aware Haynes had a gun when
he agreed to give him a ride, that Williams decided to pursue Robinson, that Williams instructed
Haynes to shoot Robinson, and that Williams warned Alsbrooks not to say anything about the
murder. A rational jury thus could find that Williams was guilty as a party to murder. We overrule
Williams's fourth point of error. 

Extraneous Offenses


 In his fifth point of error, Williams argues that the trial court erred by admitting evidence of
extraneous offenses because the evidence was inadmissible under Rules 403 and 404(b) of the Texas
Rules of Evidence. Although Williams asserts in his brief that extraneous offense evidence "kept
appearing in the reporter's record," he only cites two points in the record. We therefore confine our
review to the evidence addressed at those points. See Tex. R. App. P. 38.1(h). 

 At the first point in the record cited by Williams, the prosecutor asked Officer Matjeka how
he first contacted Williams. Matjeka responded, "I contacted him at the Bexar County Jail." The
prosecutor then asked whether Williams was booked under his own name, and Matjeka responded,
"No, sir. He had been booked under--" At that point, the defense objected on the ground that the
"failure to identify" was an extraneous offense. The court overruled the objection, and Matjeka
continued to explain that Williams was booked under his brother's name and that Williams was
booked into the jail rather than juvenile detention because his brother was an adult. Matjeka did not
reveal how Williams came to be identified as his brother. At the second point in the record cited by
Williams, the prosecutor asked Williams why he was booked under his brother's name. The defense
objected on the ground that the question called for an extraneous offense. After the trial court
overruled the objection, Williams answered that his mother had "passed away, and she usually [came
to] get me out of juvenile. And I didn't have nobody to come get me out of juvenile. So I was going
to use my brother's name so I could make bond out of the jail house." 

 In reviewing these points in the record, we find no objection on the basis of Rule 403. 
Williams thus failed to preserve his argument under that Rule. See Montgomery v. State, 810
S.W.2d 372, 387 (Tex. Crim. App. 1990). 

 Although Williams's extraneous offense objections were sufficient to raise his argument
under Rule 404(b), he waived this argument by failing to object at other points at which similar
evidence was admitted. Before Williams objected, Matjeka testified without objection that Williams
was in jail and that he was not booked under his own name. Later, Williams's written statement was
admitted into evidence. In the statement, Williams admits, "I am under arrest for theft and evading
arrest. When I was arrested, I used my brother's name and they booked me in the county jail"
(emphasis added). Although Williams objected to the admission of the written statement on the
grounds that it was involuntary, that it was taken in violation of the Family Code, and that the proper
predicate had not been laid, he did not request that any portion of it be redacted to remove references
to extraneous offenses. Williams thus waived his argument that the extraneous offense evidence was
improperly admitted. See Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). 

 Williams also argues in his fifth point of error that the trial court erred by failing to conduct
a hearing, at both the guilt/innocence phase and the punishment phase, to determine whether the
State could prove the extraneous offenses beyond a reasonable doubt. The court of criminal appeals
has held that when the State attempts to introduce evidence of extraneous offenses, the trial court
must make an initial determination that a jury could reasonably find beyond a reasonable doubt that
the defendant committed the extraneous offenses. See Mitchell v. State, 931 S.W.2d 950, 954 (Tex.
Crim. App. 1996); Harrell v. State, 884 S.W.2d 154, 160 (Tex. Crim. App. 1994).

 Williams did not request a hearing on this issue at the guilt/innocence phase, nor did he argue
that the State could not establish beyond a reasonable doubt that he falsely identified himself. 
Therefore, this issue is waived. See Tex. R. App. P. 33.1(a). We also note that Williams does not
assert on appeal that the State failed to prove beyond a reasonable doubt that he falsely identified
himself. Moreover, the fact that he falsely identified himself was uncontested at trial--Williams
himself admitted it. Under such circumstances, we are unable to discern how Williams was harmed
by the trial court's failure to conduct a hearing to determine if the State could prove this fact beyond
a reasonable doubt. 

 At the punishment phase, the State presented evidence that Williams committed theft of a
car and that he evaded arrest, as well as evidence that he falsely identified himself. Williams did not
request a hearing to determine whether the State could prove these offenses beyond a reasonable
doubt, nor did he object to the evidence when it was admitted. Instead, he waited until the State had
presented all its evidence and then moved for a mistrial on the ground that the State had failed to
establish the commission of the offenses beyond a reasonable doubt. This action was untimely and
did not operate to preserve his argument on appeal that the trial judge erred by failing to make the
beyond-a-reasonable-doubt determination when the evidence was admitted. See Tex. R. App. P.
33.1(a). 

 Williams's final argument under his fifth point of error is that the trial court erred by failing
to instruct the jury at the guilt/innocence phase that it could not consider evidence of any extraneous
offense unless it determined that the State proved the offense beyond a reasonable doubt. Because
Williams did not request this instruction, we are limited to determining whether Williams suffered
egregious harm from the court's failure to include the instruction. See George v. State, 890 S.W.2d
73, 76 (Tex. Crim. App. 1994); Warfield v. State, 974 S.W.2d 269, 273 (Tex. App.--San Antonio
1998, pet. ref'd). Egregious harm only exists when the error was so severe that it deprived the
accused of a fair and impartial trial. See Almanza v. State, 686 S.W.2d 157, 172 (Tex. Crim. App.
1985). As noted above, it was uncontested at trial that Williams falsely identified himself. We
therefore conclude that Williams was not egregiously harmed by the court's failure to instruct the
jury that it could not consider this extraneous offense unless the State proved it beyond a reasonable
doubt. We overrule Williams's fifth point of error. 

Withholding of Evidence


 In his sixth point of error, Williams argues that his conviction should be reversed because
the State withheld evidence. The State has an affirmative duty under the Due Process Clause to
disclose exculpatory or impeachment evidence that is material to guilt or punishment. See United
States v. Bagley, 473 U.S. 667, 676 (1985); Brady v. Maryland, 373 U.S. 83, 87 (1963); State v.
DeLeon, 971 S.W.2d 701, 705 (Tex. App.--Amarillo 1998, pet. ref'd); Harwood v. State, 961
S.W.2d 531, 544 (Tex. App.--San Antonio 1997, no pet.). When the evidence is disclosed during
trial, the materiality question turns on whether the defendant was prejudiced by the delayed
disclosure. See Yates v. State, 941 S.W.2d 357, 364 (Tex. App.--Waco 1997, pet. ref'd). 
Furthermore, when previously withheld evidence is disclosed at trial, the defendant has an
opportunity to request a continuance. See id.; Losoya v. State, 636 S.W.2d 566, 571 (Tex.
App.--San Antonio 1982, no pet.). The failure to request a continuance waives any Brady violation,
as well as any violation of a discovery order. See Lindley v. State, 635 S.W.2d 541, 544 (Tex. Crim.
App. [Panel Op.] 1982); Yates, 941 S.W.2d at 364; Losoya, 636 S.W.2d at 571. 

 Although Alsbrooks testified at trial that Williams directed Haynes to shoot Robinson,
Alsbrooks's written statement did not include this information. Alsbrooks testified at trial that he
gave the information to the police officers who interviewed him, but instructed them not to include
it in the written statement because he was afraid for his life. The police officers corroborated this
account. 

 Williams argues that his conviction must be reversed because the State did not inform him
that Alsbrooks would testify that Williams instructed Haynes to shoot Robinson. This argument fails
for several reasons. First, the evidence was inculpatory, not exculpatory. Second, when the
evidence was revealed during the State's direct examination of Alsbrooks, Williams did not object
or request a continuance. Third, the defense thoroughly cross-examined Alsbrooks on the
discrepancy between his trial testimony and his written statement, and Williams has not suggested
that he would have pursued a different trial strategy if he had known this information sooner. We
overrule the sixth point of error. 

Conclusion


 Having overruled each of Williams's points of error, we affirm the judgment of the trial
court.


 Tom Rickhoff, Justice

PUBLISH


1. Williams was certified to be tried as an adult.
2. It is undisputed in this case, as in Anthony, that the San Antonio Police Department has been designated as a
place for processing juveniles. The parties also seem to agree that the Youth Crimes Bureau was a designated juvenile
processing office. 
3. We also believe the interest in achieving the purpose of sections 52.02 and 52.025 is somewhat diminished in
this case, given that Williams had already been exposed to adult offenders and the stigma of criminality when he was
booked into the Bexar County Jail as a result of his own misrepresentations. 
4. Although the point of error asserts that the statement was also inadmissible pursuant to section 51.095 of the
Family Code, the Fifth and Sixth Amendments to the United States Constitution, and Article 1, Section 10 of the Texas
Constitution, these issues are waived because Williams has not provided any argument or authorities to support them. 
See Tex. R. App. P. 38.1(h); Stahle v. State, 970 S.W.2d 682, 692 (Tex. App.--Dallas 1998, pet. ref'd).