NUMBER 13-04-00079-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

                                                                                                                       


MITCHELL MAVOIDES,                                                                    Appellant,

 

                                                             v.

 

THE STATE OF TEXAS,                                                                    Appellee.

                                                                    
                                                   

    On appeal from the 117th District Court of Nueces County,
Texas.

                                                                                                                       


                                MEMORANDUM OPINION

 

      Before Chief Justice Valdez and Justices Hinojosa and Yañez

                            Memorandum Opinion by Justice Yañez

 








Appellant, Mitchell Mavoides, was indicted on April
3, 2003, on three counts of capital murder,[1]
two counts of aggravated kidnapping,[2]
two counts of aggravated robbery,[3]
one count of burglary of a habitation,[4]
and one count of tampering with evidence.[5]  After a jury trial, appellant was found
guilty on all counts except tampering with evidence, and was sentenced by the
trial court on January 29, 2004, to life imprisonment for capital murder,
twenty-five years for aggravated kidnapping and aggravated robbery, and ten
years for burglary.  On February 11,
2004, appellant timely filed his notice of appeal.  The trial court has certified that this is
not a plea-bargain case, and the defendant has the right of appeal.[6]    We affirm.

Background








In early February 2003, the Corpus Christi Police
Department received a missing persons report from family members of Mr. and Ms.
Weldon Parker, an elderly couple.  After
an initial investigation, police received information that appellant and
another individual, Donald Wilcox, an ex-convict, may have been involved in the
Parkers= disappearance. 
On February 11, 2003, authorities discovered the Parkers= corpses in a grassy field.  Mr. and Ms. Parker had been shot multiple
times in the head, and were lying face down, with their hands bound by
ligatures.  On that same day, police
arrested appellant, who was fifteen years old at the time of the homicides, on
suspicion of capital murder.  After
appellant was taken into custody, he was taken to a juvenile processing area,
and shortly thereafter, advised of his rights by a magistrate.  Approximately two hours later, without any
prior notification to appellant=s parents, detectives obtained a written statement
from appellant implicating him in the homicides.  After being in custody for approximately two
days, police notified appellant=s father concerning the allegations.     

Issues on Appeal

In his first issue, appellant contends the juvenile
court lacked jurisdiction to transfer his case to adult criminal court because
the State failed to comply with juvenile notice requirements set forth in
section 53.04(d)(3) of the Texas Family Code.  
In a second issue, appellant similarly complains that the State failed
to satisfy notice requirements of the family code because his mother was not
served.[7]  In his third issue, he contends the adult
criminal court erred in admitting appellant=s
statements because the authorities failed to notify his parents concerning the
allegations against him, as required by section 52.02(b) of the family
code.  In appellant=s fourth issue, he complains that the court
improperly denied his requested jury instruction regarding the admissibility of
his statement under section 52.02(b) of the family code.  

Analysis

In appellant=s first and second issues, he argues that the State=s petition for discretionary transfer to adult
criminal court failed to state that appellant=s
mother, Martha Horton, does not reside or cannot be found in the state, or that
her place of residence is unknown in violation of section 53.04(d)(3) of the
family code.[8]  Appellant also argues that the State failed
to serve his mother with a copy of the summons and petition, as required by the
family code.








Section 54.02(b) of the family code provides, in
relevant part, that A[t]he petition and notice requirements of Sections
53.04, . . ., [and] 53.06. . . must be satisfied.@[9]   Section
53.04(d) provides, in pertinent part, that

(d) The petition must state:

  

   (1) with
reasonable particularity the time, place, and manner of the

   acts
alleged and the penal law or standard of conduct allegedly

   violated by
the acts;

 

   (2) the
name, age, and residence address, if known, of the child who is

   the subject
of the petition;

 

   (3) the
names and residence addresses, if known, of the parent,

   guardian,
or custodian of the child and of the child's spouse, if any;

 

   (4) if the
child's parent, guardian, or custodian does not reside or

   cannot be
found in the state, or if their places of residence are

   unknown,
the name and residence address of any known adult relative

   residing in
the county or, if there is none, the name and residence

   address of
the known adult relative residing nearest to the location of

   the court;
. . .[10]

The petition requirements of section 53.04(d) of the
family code are mandatory.[11]  Additionally, section 53.06(a)(2) requires
the juvenile court to direct issuance of the summons to the child=s parent, guardian, or custodian.[12]  The issuance of a summons to either of the
child's parents is sufficient to comply with section 53.06.[13]








On March 10, 2003, the State filed a petition for
discretionary transfer to adult criminal court, alleging the name and address
of appellant=s father as AHarry Mavoides, 4630 Blundell, Corpus Christi,
Texas.@  However, the
petition did not include any information concerning the identity or whereabouts
of appellant=s mother.  The
record reflects that a summons was served on appellant=s father on March 12, 2003, notifying him of a March
28, 2003 juvenile court hearing concerning the petition.  Additionally, on March 19, 2003, appellant=s mother was served with a copy of the summons.  At the hearing, the State=s attorney, appellant, his trial counsel, and his
father made an appearance.  The trial
court inquired whether all appropriate parties had been served, and the State
represented that they had, without any objection by appellant or his trial
counsel.  After hearing arguments from
the State and counsel for appellant, the court waived jurisdiction and transferred
the case to adult criminal court, by order signed April 1, 2003.  








Section 53.06(a)(2) specifies Aparent@ in the singular as a proper party summoned, and
lists parent along with Aguardian, or custodian@ in
the disjunctive.[14]  Similarly, section 53.04(d)(3) refers to Aparent@ in the singular as a proper party for purposes of
the petition.[15]  Based on our review of the language contained
in section 53.04(d)(3), we conclude the statute does not require that both
parents be named in the petition.[16]  Because the petition contained the name and
address of appellant=s father, we find that the State satisfied the
requirements of section 53.04(d)(3).[17]  Further, because appellant's father was
present at the certification hearing pursuant to the summons that was properly
issued and served on him, we conclude the requirements of section 53.06(a)(2)
were satisfied.[18]  Accordingly, appellant=s first and second issues are overruled. 

Regarding appellant=s
third issue concerning the adult criminal court=s
admission of appellant=s statement, a trial court has broad discretion in
determining the admissibility of evidence, and its ruling on a motion to
suppress will not be set aside without a showing of abuse of discretion.[19]  Only when the trial court's decision is so
wrong as to lie outside of the zone of reasonable disagreement will the
decision be reversed.[20]









The Texas Family Code sets out detailed procedures
for the detention and arrest of juveniles accused of delinquency, with which
police officers and courts are bound to comply.[21]  Section 52.02 provides that a person taking a
child into custody must immediately bring that child to a designated juvenile
processing office or to one of several listed alternative sites.[22]  Additionally, section 52.02(b) provides
that  a person taking a child into
custody shall promptly give notice of the person's action and a statement of
the reason for taking the child into custody, to the child's parent, guardian,
or custodian, and the office or official designated by the juvenile board.[23]  Appellate courts have considered the
following factors in determining whether parental notification was Aprompt:@  (1) the
length of time the juvenile had been in custody before police notified a
parent, guardian, or custodian; (2) whether notification occurred after police
obtained a statement; (3) the ease with which the police were ultimately able
to contact the appropriate adult; and (4) what the police did during the period
of delay.[24]  Efforts at compliance with the requirements
of the family code have  been closely
scrutinized by Texas courts in the past.[25]  Any violations of the family code will render
evidence subsequently obtained from the child inadmissible.[26]








At a pretrial suppression hearing, Detectives
Stimmler and Revis, who were investigating the Parkers= homicide, testified that they received information
from two female informants indicating that appellant may have been involved in
the homicides.  Officers Tovar and Gomez
testified that they assisted with appellant=s
initial arrest, which occurred at approximately 10:50 p.m.  The detectives also testified that after
appellant was arrested, he was transported to the police station=s designated juvenile processing floor, where they
asked him for information regarding his parents=
whereabouts.  According to the
detectives, appellant told them he was unaware of his parents= specific whereabouts.  Judge Medary testified that she arrived at
the station at approximately 11:30 p.m., asked appellant about his parents= whereabouts, and subsequently read him his
rights.  According to Judge Medary,
appellant told her that his father was somewhere in Corpus Christi, though he
was unsure of his father=s specific whereabouts.  As to his mother, appellant informed Judge
Medary that she lived in New York but he was unsure as to how to contact
her.   Approximately three hours after
appellant was taken into custody, and prior to any parental notification by
authorities, he  signed a statement
admitting his involvement in the crime, but denying that he killed the
Parkers.  Approximately two days later,
authorities located and notified his father concerning the charges against
appellant.  








The record demonstrates that the detectives involved
in the detention and interrogation of appellant did not strictly adhere to the
requirements of section 52.02(b).[27]  Detectives knew appellant=s father resided in Corpus Christi, and that his
mother resided in New York.  Nonetheless,
Detective Stimmler made no attempt to contact appellant=s mother prior to obtaining appellant=s statement, nor did he ask appellant whether he
desired to contact his mother. 
Additionally, detectives did not try to contact appellant=s father between the time of appellant=s arrest and when he provided them with a
statement.  Appellant=s parents testified that had they been properly
notified, they would have insisted that appellant consult an attorney prior to
being interviewed by police.  Although
appellant was properly transported to an appropriate juvenile facility, there
was an unjustifiable delay in notifying his parents, which, based on the
attendant facts of this case, was inexcusable. 
Because the statement was obtained as a result of the detectives= violation of parental notification requirements,
the statement was inadmissible at trial.[28]  Therefore, the court abused its discretion in
allowing the statement of appellant to be used against him at trial.[29]  This Court must determine whether the
admission of appellant=s statement constitutes reversible error.  

A court of appeals must reverse a judgment based on
an error such as this unless the court determines beyond a reasonable doubt
that the error did not contribute to the conviction or punishment of the
defendant.[30]

At trial, other than the improperly admitted
statement and appellant=s rebuttal testimony, the State introduced
substantial evidence that implicated appellant in the homicides.  Celso Ramos, an inmate who was incarcerated
with appellant, testified that appellant told him of his involvement in the
homicides.  According to Ramos, appellant
told him that he was the one who shot Ms. Parker.  Gregory Crum, an acquaintance of appellant,
also testified that appellant told him that he took a vehicle and $1500 from a
man, tied the man up, put him in the truck, and later shot him.  Considering other evidence tying appellant to
the homicides, in particular, testimony of two independent witnesses, we
conclude, despite admission of the improper statement, that the error did not
contribute to the conviction or punishment of appellant.[31]  Appellant=s
third issue is overruled.     








In his fourth issue, appellant complains that the
court improperly denied his request for a jury instruction regarding the
admissibility of his statement.   We have
already concluded that police obtained appellant=s
statement in violation of the family code=s notification requirements.  Assuming, without deciding, that the court erred
in its subsequent denial of appellant=s jury instruction, in light of the additional
evidence presented by the State, in particular, the testimony of Ramos and
Crum, we conclude error, if any, was harmless.[32]  Accordingly, we overrule appellant=s fourth issue. 

Conclusion 

Because all of appellant=s complaints on appeal have been overruled, we
affirm the

judgment of the trial court.

 

___________________________ 

LINDA REYNA YAÑEZ

Justice

 

 

 

 

Do not publish. 
See Tex. R. App. P.
47.2(b).

 

Memorandum opinion delivered and filed

this the 13th day of July, 2006.











[1] 
See Tex. Pen. Code Ann. '' 19.03(a)(2) and (7)(A) (Vernon
2003).





[2] 
See id. ' 20.04(b).





[3] 
See id. ' 29.03(a)(2).





[4] 
See id. ' 30.02(a)(1).





[5] 
See id. ' 37.09(d)(1).





[6]  See Tex.
R. App. P. 25.2(a)(2).





[7] 
Because appellant=s first and second issues both
challenge the propriety of the court=s jurisdiction, we will address them in a single
issue.                           





[8] 
See Tex. Fam. Code Ann. '' 54.02(b), 53.04(d)(3) (Vernon
2005). 





[9] 
See id. ' 54.02(b).





[10] 
See id. ' 53.04(d)(3).





[11] 
In re Edwards, 644 S.W.2d 815, 820 (Tex. App.BCorpus Christi 1982, writ ref=d n.r.e.) (citing In the Matter
of W.L.C., 562 S.W.2d 454, 455 (Tex. 1978)).





[12] 
See Tex. Fam. Code Ann.
' 53.06(a)(2) (Vernon 2005). 





[13]  In re Edwards, 644 S.W.2d at 818.





[14] 
See Tex. Fam. Code Ann.
' 53.06(a)(2) (Vernon 2005). 





[15] 
See id. ' 53.04(d)(3).





[16] 
See id.; In the Matter of P.C., 858 S.W.2d 6, 7-8 (Tex.
App.BHouston [1st Dist.] 1993, no pet.)
(concluding statutory reference to Aparent@ in the singular did not require that both parents be
summoned).





[17] 
See Tex. Fam. Code Ann.
' 53.04(d)(3).





[18] See id. ' 53.06(a)(2); In re Edwards, 644 S.W.2d at 818;
In the Matter of P.C., 858 S.W.2d at 7-8. 





[19] 
Almaguer v. State, 960 S.W.2d 172, 173‑74 (Tex. App.BCorpus Christi 1997, no pet.). 





[20] 
Cantu v. State,
842 S.W.2d 667, 682 (Tex. Crim. App. 1992).





[21] 
Tex. Fam. Code Ann. '' 52.01‑026 (Vernon Supp.
2005); In re D.Z., 869 S.W.2d 561, 564 (Tex. App.BCorpus Christi 1993, writ
denied).  





[22]  Tex. Fam. Code Ann. ' 52.02 (Vernon Supp. 2005); Anthony
v. State, 954 S.W.2d 132, 136 (Tex. App.BSan Antonio 1997, no pet.). 





[23] 
Tex. Fam. Code Ann. ' 52.02(b) (Vernon Supp. 2005).





[24] 
See Vann v. State, 93 S.W.3d 182, 184 (Tex. App.BHouston [14 th Dist.] 2002, pet.ref=d).





[25] 
See, e.g., Anthony, 954 S.W.2d at 135; In re R.R., 931
S.W.2d 11, 13‑14 (Tex. App.BCorpus Christi 1996, no writ); In re D.Z., 869
S.W.2d at 563‑65. 





[26] 
Tex. Fam. Code Ann. ' 54.03(e) (Vernon Supp. 2005).





[27] 
Tex. Fam. Code Ann. ' 52.02(b).





[28] 
See id.; In
re U. G., 128 S.W.3d 797, 799 (Tex. App.BCorpus Christi 2004, pet. denied) (concluding court abused
its discretion in admitting juvenile statement because authorities failed to
adhere to strict requirements of section 52.02).  





[29] 
Tex. Fam. Code Ann. ' 52.02(b); In re U. G., 128
S.W.3d at 799.





[30]  See Tex.
R. App. P. 44.2(a).





[31] 
See id.





[32] 
See Tex. R. App. P. 44.2(a).