Opinion issued May 22, 2003








 



In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00659-CR




 ALEX APOLINAR, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 184th District Court
 Harris County, Texas
Trial Court Cause No. 886358




O P I N I O N

          A jury convicted appellant, Alex Apolinar, of aggravated robbery and assessed
punishment at 35 years in prison and a $10,000 fine. See Tex. Pen. Code Ann. §§
29.03(a)-(b), 12.32 (Vernon 2003). We determine (1) whether the evidence was
factually sufficient to show that appellant was the perpetrator; (2) whether the
admission of extraneous-offense evidence at the punishment phase, if error, was
harmful; (3) whether appellant carried his burden of showing that his trial counsel
was ineffective for failing to object to a voir dire statement by the trial court; (4)
whether the trial court erred in admitting a hearsay statement under the excited-utterance exception; (5) whether the trial court erred in overruling appellant’s
objection under Rule of Evidence 403


 to testimony referring to extraneous bad acts;
and (6) whether appellant preserved his complaint about an alleged Brady


 violation.
We affirm.
Facts
          Seventy-one-year-old Pelagio Jimenez was beaten, stabbed in the abdomen,
and robbed of cash on August 17, 2001, a Friday. Jimenez was able to disarm his
attackers and to stab one in the chest and the other in the arm. A witness to the
attack, Albert Thompson, called police right away.
          The first officers arrived within two or three minutes of Thompson’s call. They
found Jimenez on the ground, lying in a pool of blood and going into shock. The
only information that Jimenez could relate was cuchillo (“knife”) and dos (“two”),
which he said when asked for the number of attackers.


 
          Thompson told the officers that two Hispanic men had attacked Jimenez and
had then fled in different directions. An unnamed witness also told the officers that
Jimenez had stabbed at least one of his assailants. The officers immediately began
searching the area for suspects, and within three to five minutes after their arrival,
they found two Hispanic men, both bleeding, who were walking down a nearby street
that was within walking distance of the crime scene. The two men were appellant and
Victor Badillo.


 Despite being wounded, neither man asked the officers for help, and
when appellant first saw the officers, he started to walk away. The men stopped upon
the officers’ command.
          Appellant had a one-inch stab wound on his forearm. Badillo had several stab
wounds, one in his chest. When questioned about their wounds, appellant and
Badillo told the officers that they had been attacked and stabbed by several African-American men in an area near where Jimenez was attacked. However, the officers
found the alibi unconvincing and suspicious because appellant and Badillo could not
give details of the alleged attack, their stories conflicted, appellant could not say what
had been stolen from him, and the officers believed it was unlikely that two such
attacks would happen close in time and place. The officers did not arrest appellant
and Badillo, but instead called an ambulance for them. 
          The officers did not thoroughly search appellant that night because he was not
under arrest. They searched the scenes of the crime and the detention, but found
neither money nor a knife. The next day, the police found a knife at the crime scene. 
The knife had no blood on it, but an officer testified that the blade was consistent with
the wounds that both appellant and Jimenez had suffered.
          Jimenez had surgery the night of the attack. The hospital notified his daughter,
Juliet Ralph. Jimenez was unable to speak coherently to his daughter until four days
later, when he told her about the attack and mentioned that he had stabbed one of his
attackers in the chest and the other in the arms.
          A week later, on August 28, a police officer showed Jimenez a photographic
array, from which Jimenez, through his daughter’s interpreting, positively identified
appellant.


 Jimenez also told the officer that he had stabbed one of his attackers in
the chest and the other in the side or the back. The next day, the police obtained a
warrant and arrested appellant, who at that time had neither a knife nor money on his
person.
A.      Factual Sufficiency of the Evidence
          In issue one, appellant claims that the evidence is factually insufficient to show 
that he was the attacker.
          In a factual-sufficiency review, we examine all of the evidence neutrally and
ask whether proof of guilt is so obviously weak as to undermine confidence in the
jury’s determination or so greatly outweighed by contrary proof as to indicate that a
manifest injustice has occurred. See Zuliani v. State, 97 S.W.3d 589, 593-94 (Tex.
Crim. App. 2003). We must avoid substituting our judgment for that of the factfinder. 
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The factfinder is the sole
judge of the weight and credibility of witness testimony. Id. In our review, we must
consider the most important evidence that the appellant claims undermines the jury’s
verdict. Sims v. State, No. 1328-01, slip op. at 6-7 (Tex. Crim. App. Mar. 12, 2003).
          Appellant argues that the evidence identifying him as an assailant was factually
insufficient because Jimenez’s in-court identification of appellant was weak;


 the
eyewitness testimony conflicted or was not believable;


 appellant’s alibi was
allegedly not investigated; no physical evidence connected appellant to the attack;
and Jimenez’s claim that he stabbed his attackers was not believable because Jimenez
was old and feeble and because neither Jimenez nor the assailants had injuries to their
hands that were consistent with having struggled over a knife.
          First, the credibility and the weight to be given any witness’s testimony was for
the jury to assess. See Johnson, 23 S.W.3d at 7. Second, Jimenez did identify
appellant three times at trial, even if Jimenez also appeared confused or had trouble
seeing. An officer also testified that Jimenez was “very coherent” when he identified
appellant from the array only 11 days after the attack, and Juliet testified that Jimenez
seemed “certain” in identifying appellant from the array and was “alert” that day. 
Third, we note that the eyewitness testimony was fairly consistent in describing both
the fact of the attack and appellant’s and Badillo’s general appearance. Fourth, the
record shows that police did visit appellant to investigate the alleged attack on him,
but appellant could give few details. In any event, several officers thought that
appellant’s and Badillo’s alibis were suspicious and unbelievable. Fifth, the fact that
the police found no evidence on appellant at any time or at the crime scene the night
of the attack is not dispositive: police did not search appellant thoroughly the night
of the attack, he was not arrested until 12 days later, and police found a knife, with
a blade consistent with appellant’s wound, the very next day. The fact that the knife
had no blood on it went to the weight of that evidence, which was for the jury to
assess. See id. Sixth, although appellant had no wounds on his hands, two officers
testified that appellant’s arm wound was consistent with his having taken a defensive
posture during the assault.
          Resolving these factual disputes was for the jury. See id. We hold that the
evidence on which appellant relies does not render the remaining evidence factually
insufficient to support the verdict. 
          Accordingly, we overrule issue one. 
B.      Evidence of Unadjudicated Extraneous Offense Admitted at Punishment 
          In issue three, appellant claims that the trial court erred in allowing Officer
Corley to testify during punishment about an unadjudicated extraneous offense
because the State had not given adequate notice under Code of Criminal Procedure
article 37.07, section (3)(g), which provides:
On timely request of the defendant, notice of intent to introduce
evidence under this article shall be given in the same manner required
by Rule 404(b), Texas Rules of . . . Evidence.


 If the attorney
representing the state intends to introduce an extraneous crime or bad
act that has not resulted in a final conviction in a court of record or a
probated or suspended sentence, notice of that intent is reasonable only
if the notice includes the date on which and the county in which the
alleged crime or bad act occurred and the name of the alleged victim of
the crime or bad act. . . . .

Tex. Code Crim. Proc. Ann. art. 37.07, § (3)(g) (Vernon Supp. 2003).
          The trial court has broad discretion to admit or exclude extraneous-offense
evidence. See Brooks v. State, 76 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.]
2002, no pet.) (applying this standard to admission of extraneous-offense evidence
over objection based on article 37.07, section 3(g)’s notice requirements).
          The State’s article-37.07 notice indicated that Officer Corley would testify that
appellant had assaulted him in 1997. Before the second day of punishment testimony
began, appellant moved to exclude part of Officer Corley’s testimony. Appellant
argued that the State had revealed only the day before that the officer would also
testify to an uncharged extraneous offense by appellant that the officer was trying to
stop when appellant assaulted the officer.


 The trial court reluctantly ruled that the
officer could testify because the State had not learned about the uncharged extraneous
offense until shortly before the State notified defense counsel, but the court also ruled
that appellant could question the officer about the uncharged offense for 20 minutes
before testimony began. The trial court overruled appellant’s motion.



          The State argues that appellant waived this challenge for having cited Rule of
Evidence 404 below, rather than article 37.07, section (3)(g). In citing rule 404(b),
appellant misspoke the rule on which he was relying, although his mistake is
understandable, given that article 37.07, section (3)(g) refers to rule 404(b). 
Nevertheless, appellant also cited the substance of article 37.07, section (3)(g), and
it is clear that the trial court understood that appellant was speaking of article-37.07
notice. See Tex. R. App. P. 33.1(a)(1)(A) (requiring only that objection be stated with
“sufficient specificity to make the trial court aware of the complaint . . . .”). 
Accordingly, appellant did not waive this challenge.
          If the admission of this testimony was error, we hold that that error was
harmless. Error in admitting evidence with insufficient notice under article 37.07,
section 3(g) is non-constitutional error. See Roethel v. State, 80 S.W.3d 276, 281
(Tex. App.—Austin 2002, no pet.) (concluding that error in admitting extraneous-offense evidence over objection based on article 37.07, section 3(g)’s notice
requirement is subject to rule-44.2(b) harmless-error analysis); accord Brooks, 76
S.W.3d at 435 (same). We must disregard any such error that does not affect a
substantial right. Tex. R. App. P. 44.2(b). An error affects a defendant’s substantial
rights when the error had a substantial and injurious effect or influence on the jury’s
verdict. King v. State, 953 S.W.3d 266, 271 (Tex. Crim. App. 1997). If the error had
no or only a slight influence on the verdict, the error is harmless. See Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
          The statute’s purpose is to avoid unfair surprise and to enable the defendant to
prepare to answer the extraneous-offense evidence. See Roethel, 80 S.W.3d at 282;
Nance v. State, 946 S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref’d). To
determine harm in light of that purpose, we analyze whether and how the notice
deficiency affected appellant’s ability to prepare for the evidence. Roethel, 80
S.W.3d at 281-82. The Austin Court of Appeals has stated the test as follows: the
appellate court examines the record to determine whether the deficient notice
“resulted from prosecutorial bad faith” or “prevented the defendant from preparing
for trial,” the latter inquiry including whether the defendant was surprised by the
substance of the evidence and whether the lack of notice affected his ability to
prepare cross-examination or mitigating evidence. Id. at 282.
          The trial court noted that the State had itself discovered the complained-of
extraneous offense only “very recently” before the second day of the punishment
phase, and the State appears to have told appellant’s counsel of the offense soon
afterwards, within a day of Officer Corley’s testifying. The trial court thus seems to
have concluded that the State did not act in bad faith, and nothing suggests otherwise. 
Additionally, the trial court tried to mitigate any surprise by giving defense counsel
20 minutes to interview Officer Corley before testimony began. Defense counsel did
not request more time at the end of those 20 minutes, and nothing suggests that the
20-minute allowance did not suffice for counsel to prepare cross-examination.


 
Moreover, when appellant later took the stand, he discussed the complained-of event
and admitted his presence at the scene, but he claimed that others with him had
attacked the victim.


 Nothing shows that appellant was surprised by or unable to
defend against Officer Corley’s different version of those events. 
          Nor can we conclude that the complained-of testimony was harmful in any
other way. The crime was particularly violent, and the victim was an elderly man. 
The jury had already heard Jimenez testify during punishment that appellant had
robbed Jimenez twice before. The jury also heard that appellant assaulted Officer
Corley and that appellant attacked or resisted other police officers and tried to
strangle a police dog during the same incident. Furthermore, another officer who
was present when appellant assaulted Officer Corley testified that he was called to the
scene to assist in apprehending two fleeing suspects. Therefore, although the jury did
not know from this officer’s testimony whether appellant had actually committed
another crime just before assaulting Officer Corley, the jury knew at least that
appellant was at that time a suspect in another crime. Moreover, the jury could
surmise that appellant had done something wrong before attacking Officer Corley
because, when a uniformed Officer Corley approached appellant, appellant fled and
then violently resisted arrest. Finally, against the advice of counsel, appellant took
the stand and, on cross-examination, contradicted himself repeatedly and finally
admitted to the charged offense, to having hit Jimenez on at least one prior occasion,
and to the assault on Officer Corley and the attack on the police dog. Even having
these matters before it, the jury assessed punishment at 35 years in prison, far less
than the maximum prison time of 99 years or life. See Tex. Pen. Code Ann. §
12.32(a), (b) (establishing punishment range of five to 99 years or life, plus maximum
fine of $10,000). 
          Given these considerations, we cannot say that the admission of the
complained-of extraneous offense, if error, had a substantial and injurious effect or
influence on the verdict. See King, 953 S.W.3d at 271.
          We overrule issue three.
C.      Ineffective Assistance of Counsel
          In issue five, appellant claims that his trial counsel was ineffective for failing
to object to the trial court’s statement to the venire panel, when explaining the
indictment, that “[a] complainant is just a legal word for victim.” Appellant claims
that the reference was an improper comment on the evidence, allegedly conveying
that the trial court believed that Jimenez was “a victim at appellant’s hand.”
          To prove ineffective assistance, a defendant must show, by a preponderance of
the evidence, that (1) counsel’s performance was so deficient that he was not
functioning as acceptable counsel under the Sixth Amendment and (2) there is a
reasonable probability that, but for counsel’s error or omission, the result of the
proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 2064-69 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999). The defendant must overcome the strong presumption that the
challenged action might have been sound trial strategy. Thompson, 9 S.W.3d at 813. 
We will normally not speculate to find trial counsel ineffective when the record is
silent as to counsel’s reasoning or strategy. Gamble v. State, 916 S.W.2d 92, 93 (Tex.
App.—Houston [1st Dist.] 1996, no pet.).
          Assuming without deciding that the trial court’s statement was error, nothing
in the record shows counsel’s reasons for not objecting. Holding trial counsel
ineffective on this record would require us to speculate, which we decline to do. See
Id.
          Accordingly, we overrule issue five.
D.      Excited-Utterance Exception to the Hearsay Rule
          In part of issue two, appellant claims that the trial court erred in allowing Juliet
to testify, under the excited-utterance exception to the hearsay rule, to what Jimenez
had told her four days after the attack.
          A trial court has broad discretion in determining whether evidence is
admissible as an exception to the hearsay exclusionary rule. See Zuliani, 97 S.W.3d
at 595; Kubin v. State, 868 S.W.2d 394, 396 (Tex. App.—Houston [1st Dist.] 1993,
pet. ref’d).
          An excited utterance is a statement that relates to a startling event or condition
and that is made while the declarant is under the stress of excitement caused by the
event or condition. Tex. R. Evid. 803(2). An excited utterance is not subject to the
exclusionary rule applicable to other hearsay. See Tex. R. Evid. 803. “The basis for
the excited utterance exception is ‘a psychological one, namely, the fact that when a
man is in the instant grip of violent emotion, excitement or pain, he ordinarily loses
the capacity for reflection necessary to the fabrication of a falsehood and the “truth
will come out.’” Zuliani, 97 S.W.3d at 595 (emphasis added in Zuliani) (quoting
Evans v. State, 480 S.W.2d 387, 389 (Tex. Crim. App. 1972)). That is, “the statement
is trustworthy because it represents an event speaking through the person rather than
the person speaking about the event.” Id. Accordingly, “the critical determination
is ‘whether the declarant was still dominated by the emotions, excitement, fear, or
pain of the event’ or condition at the time of the statement.” Id. at 596 (citing 
McFarland v. State, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)). The length of
time between the occurrence and the statement, and whether the statement was made
in response to questioning, are only factors to consider and are not necessarily
dispositive. Id. at 595-96.
          Jimenez was attacked on a Friday. Although Juliet visited him each day that
he was in the hospital, Jimenez was either having surgery, heavily medicated, 
unconscious, or incoherent through the Monday following the assault. The first day
that Jimenez could communicate coherently with Juliet was Tuesday, August 21, four
days after the attack. In that very first conversation with her, in which Jimenez
described the attack, Juliet said that, in contrast to his usually calm demeanor,
Jimenez appeared “mad,” he was “excited” because he had gotten “even with” his
attackers, he made hand gestures, and he spoke in a “loud” voice. It was unusual for
her father to be that upset or excited. Although Juliet did not know if anyone else had
spoken to her father before she did, he spoke no English, and she believed that she
was the first person who had spoken to him in Filipino about the attack. 
          Relying on Gay v. State, 981 S.W.2d 864 (Tex. App.—Houston [1st Dist.]
1998, pet. ref’d), appellant argues that four days is simply too long a time between
the exciting event and the statement for the latter to be an excited utterance. See id.
at 867 (holding no excited utterance because declarant most likely deliberated about
the offense during 10-day lapse). Relying further on Mosley v. State, 960 S.W.2d 200
(Tex. App.—Corpus Christi 1997, no pet.), appellant argues that the excitement
experienced by the declarant must be continuous between the event and the statement
describing it to qualify as an excited utterance. See id. at 204 (holding no excited
utterance because a number of days had passed with no indication declarant remained
in the requisite state of agitation or shock).
          This case raises the interesting question of whether the excitement flowing
from an event might be interrupted by circumstances that do not allow for
deliberation or fabrication, yet perhaps last a substantial period of time before a
statement, and that still allow the statement to meet the reliability requirement for an
excited utterance. In other words, can there ever be a “suspended excitement” or
“suspended animation” variant of the excited-utterance hearsay exception and, if so,
under what circumstances? We look to the underlying theory of the rule for the
answer. As we stated in Gay, “The theory of this exception is simply that
circumstances may produce a condition of excitement that temporarily stills the
capacity of reflection and produces utterances free of conscious fabrication.” Gay,
981 S.W.2d at 867 (quoting S. Goode, O. Wellborn & M. Sharlot, Guide to the
Texas Rules of Evidence § 803.3, at 131 (1988)). The basic theory is stated in
terms of stilling the capacity for reflection, rather than assuring temporal continuity
of the excitement between the event and the statement under all circumstances.
           Appellant’s argument that the excitement experienced by the declarant must
always be continuous between the event itself and the statement describing the event
is supported only by the authority that he cites. See Mosley, 960 S.W.2d at 204. Yet,
the statement from Mosley on which appellant relies was unnecessary to the decision
and was unsupported by any authority. That statement nevertheless appears to be the
basis for the following statement from a leading evidence treatise: “Thus, the
declarant’s excitement must be continuous between the event itself and the making
of the statement.” See Cathleen C. Herasimchuk, Texas Rules of Evidence
Handbook art. VIII at 784 (4th ed. 2001). However, the full context of the statement
in that treatise is as follows:          According to the federal drafters, “the theory of Exception (2)
[excited utterance] is simply that circumstances may produce a condition
of excitement which temporarily stills the capacity of reflection and
produces utterances free of conscious fabrication.” While this theory
has been questioned because the same excitement that enhances
sincerity is apt to diminish the faculties of perception and
communication, it has achieved sufficient acceptance over the years in
courts to be, as a practical matter, beyond the reach of criticism.
 
          The excited utterance exception has three requirements: an
exciting event must have occurred; the statement must have been a
spontaneous reaction to the event; and the statement must relate to the
event. The purpose of the relationship requirement is to ensure that the
statement is truly spontaneous and not the result of reflection, which
could inject such factors as self-interest, anger, or vindictiveness into the
utterance. That purpose is not fulfilled if the statement is not related to
the startling event. Therefore, the declarant’s statement must be more
than just the result of, or caused by, the startling event. 
 
          There is no single, rigid principle governing the three
requirements; rather, the inquiry is whether the cumulative effect of the
three requirements, taken together, is sufficient to show the reliability
of the statement. The single most critical factor is whether the declarant
made the statement while dominated by the emotion of the startling
event or condition. While the time lapse between the startling event and
the statement is not dispositive, it is the lack of opportunity to reflect or
fabricate details that gives the exception its reliability. Thus, the
declarant’s excitement must be continuous between the event itself and
the making of the statement.
 
Id. at 782-84 (citations omitted, emphasis added).
          Although continuity of excitement between the event itself and the making of
the statement is one way to assure reliability by forestalling opportunity to reflect or
fabricate, another obvious way is unconsciousness. One can scarcely reflect or
fabricate while unconscious, yet unconsciousness breaks the continuity of excitement 
experienced during the event. Accordingly, we hold that the underlying theory of an
excited utterance’s reliability—inability to reflect or fabricate—is the principle to
apply, rather than a rigid requirement that the excitement be continuous under all
circumstances. Because the federal and Texas rules regarding the excited-utterance
hearsay exception are identical, further support for our holding is found in a leading
treatise on the Federal Rules of Evidence: “Physical factors, such as shock,
unconsciousness, or pain, may prolong the period during which the risk of fabrication
is reduced to an acceptable minimum.” Weinstein’s Federal Evidence (2d ed.
2003) § 803.04[5], p. 803-26. Therefore, while the declarant’s excitement is
ordinarily continuous between the event itself and the making of the statement, it is
too strong to say that the excitement must always be continuous. We thus disagree
with the dictum in Mosley that the excitement must be continuous.
          From the evidence in this case, the trial court could have reasonably concluded
that Jimenez had not been able to reflect or fabricate and was still upset and under the
excitement and stress of the event when he spoke, even though it was four days after
the attack, because he had not been coherent enough to speak—or perhaps even to
think—about the violent incident until then.


 The cases on which appellant relies to
support the argument that Jimenez “had [the] opportunity to fabricate the statement”
because of the time lapse are distinguishable because the declarants in those cases had
the opportunity to reflect or fabricate during the periods between the event and the
statement.


 In this case, there was evidence that Jimenez was in surgery,
unconscious, heavily medicated, or incoherent through the very day that he made the
statement. The trial court thus could have reasonably concluded that, given the
circumstances, Jimenez did not have the opportunity to fabricate his statement.
          We overrule this portion of issue two.
E.      Rule 403
          In the remainder of issue two, appellant argues that the trial court should have
instructed the jury to disregard a portion of Juliet’s testimony and precluded her from
testifying further on the topic under Rule of Evidence 403. See Tex. R. Evid. 403.
          A trial court may exclude evidence under rule 403 if the probative value of the
evidence is substantially outweighed by the danger of unfair prejudice, confusion of
the issues, the potential to mislead the jury, or considerations of undue delay or
needless presentation of cumulative evidence. Id. We review the trial court’s rule-403 ruling for an abuse of discretion. Salazar v. State, 38 S.W.3d 141, 151 (Tex.
Crim. App. 2001). 
          After the trial court had overruled appellant’s hearsay objection, the State asked
Juliet how her father had explained his injury to her. Apparently surprising everyone,
Juliet responded:
He told me, because I asked him, I said what happened to you? And he
says they robbed me again. I said who? You know. And then he says,
the people that did it to me before.

The trial court immediately held a hearing outside the jury’s presence to consider the
testimony’s admissibility. The State argued that the testimony was admissible to
show identity because Jimenez’s senility and poor eyesight affected his ability to
identify appellant in court. Appellant responded that the State did not need the
extraneous-offense testimony because the jury already knew that Jimenez had
identified appellant in a photographic array and had already witnessed the in-court
identifications. The trial court agreed with the State, commenting:
[S]ince it’s hard to tell exactly what happened from the cold record, let
me just note that the complainant was a very weak, weak witness. He
is very elderly and very feeble, and he had a great deal of . . . of
difficulty expressing himself even through the interpreter. And when he
walked around the courtroom [when asked if he saw his attacker] and
looked at everybody, he looked at the students in the audience a long
time. For example, as he passed behind the lawyers, he was—there was
a large group of students here and he looked at every one of them as best
he could. The man doesn’t see very well. And then he came over and
passed by the defendant and didn’t show any sign of recognition. And
then after he came the rest of the way around and got back on the
witness stand, he did point out the defendant and accurately made signs
showing . . . it was clear he did identify the defendant. However, there
is so much in the record indicating that his eyesight is so terrible that the
complainant himself, I think made a weak—although the actual pointing
was very strong, everything leading up to that indicated that the man
would have difficulty identifying anybody. . . . [T]he complainant
because of his eyesight problems, kind of—he was just so weak that it
seems inherently unfair to me not to let the State explain why he was
able to pick him out in spite of his bad eyesight. Having watched the
complainant’s demeanor, it just seems to me that the fair thing to do is
to let—I don’t see how the man could possibly have identified
[appellant] if he hadn’t seen [appellant] on these other occasions . . . .

          Accordingly, the trial court refused to instruct the jury to disregard Juliet’s
testimony. However, granting appellant’s request in part, the trial court ruled that the
State could elicit only the fact that Jimenez recognized appellant from the previous
offenses, but could not elicit the substance of the offenses, which could be “very
prejudicial and not probative.”
          On appeal, appellant argues that “the fact that [Jimenez] had already identified
the appellant” as his attacker “was not disputed” because appellant “did not contest
the admissibility of the photospread nor of the in-court identification.” Although the
fact that Jimenez identified appellant was undisputed, the trial court could reasonably
have believed from this record that the reliability of that identification was in serious
question. That is, the trial court could have concluded that the testimony’s probative
value was high for showing how Jimenez recognized appellant. Additionally, the trial
court strictly limited the testimony, thus rendering it less prejudicial.
          Accordingly, we hold that the trial court did not abuse its discretion in
concluding that the prejudicial effect of briefly mentioning these extraneous offenses
did not substantially outweigh their probative value for showing identity. See Tex.
R. Evid. 403.
          We overrule issue two in its entirety.
E.      Brady Violation
          In issue four, appellant claims that the State committed a Brady violation by
failing to reveal until trial that Jimenez was showing signs of senility. See Brady v.
Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963). 
          In Brady, the Supreme Court held that the State’s suppressing material
evidence favorable to the accused, upon the accused’s request for the evidence, denies
the accused due process of law under the Fourteenth Amendment of the United States
Constitution, irrespective of the State’s good or bad faith in withholding the evidence. 
See id., 373 U.S. at 86-88, 83 S. Ct. at 1196-97; see also U.S. Const. amend. XIV. 
Withheld evidence is material if there is a reasonable probability that the proceeding’s
outcome would have differed had the evidence been disclosed. United States v.
Bagley, 473 U.S. 667, 681-82, 105 S. Ct. 3375, 3383-84 (1985). When the withheld
evidence is disclosed during trial, the inquiry is thus whether the defendant was
prejudiced by the tardy disclosure. Yates v. State, 941 S.W.2d 357, 364 (Tex.
App.—Waco 1997, pet. ref’d) (quoting Palmer v. State, 902 S.W.2d 561, 565 (Tex.
App.—Houston [1st Dist.] 1995, no pet.)).
          During Juliet’s testimony, outside the jury’s presence, the State revealed that
Jimenez had experienced memory problems since the assault and that “[t]he family
believes that there [have] been senility issues.” Appellant responded that he was
“concern[ed]” because the State had not revealed Jimenez’s senility to him before. 
The trial court understood this as a Brady objection. However, appellant asked only
that the trial court allow him to question Juliet about Jimenez’s senility. The trial
court granted this request. When Juliet later testified before the jury that her father
had become senile since his hospitalization, appellant chose not to cross-examine her
about it.
          When evidence withheld in violation of Brady is disclosed at trial, the
defendant’s failure to request a continuance waives the error or at least indicates that
the delay in receiving the evidence was not truly prejudicial. See Williams v. State,
995 S.W.2d 754, 762 (Tex. App.—San Antonio 1999, no pet.) (error waived); Davis
v. State, 992 S.W.2d 8, 12 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (no
prejudice shown); cf. Wilson v. State, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999)
(holding no error in denying defendant’s motion for continuance or mistrial, based
on Brady violation, when motion not made until after both sides had rested cases-in-chief: State had revealed complained-of information five days before testimony
began, but defendant did not timely object, thus waiving request). Appellant did not
request a continuance. Moreover, the trial court granted appellant the only relief that
appellant requested. Accordingly, even if the State violated Brady, appellant either
waived that error or did not show that the error prejudiced him.
          We overrule issue four.
 

Conclusion
          We affirm the judgment of the trial court.


 
                                                             Tim Taft
                                                             Justice

Panel consists of Justices Taft, Keyes, and Higley.

En banc consideration was requested. Tex. R. App. P. 41.2.

A majority of the court voted to deny en banc consideration.

Justice Jennings, dissenting from the denial of en banc consideration, joined by
Justice Hedges.

Publish. Tex. R. App. P. 47.2(b).