

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00133-CR

_____

DENNIS WAYNE ROGERS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 241st Judicial District Court
Smith County, Texas
Trial Court No. 241-2042-09

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

In Smith County,[1] Texas, in July 2009, Heather,[2] a child, made an outcry that Dennis Wayne Rogers had been sexually abusing her. At the time of the alleged abuse, Rogers was acting as Heather's stepparent. After an investigation, Rogers was indicted for continuous sexual abuse of a child. Rogers pled "not guilty." After a jury trial, he was convicted and sentenced to ninety-nine years' imprisonment.

On appeal, Rogers contends that: (1) the State failed to disclose exculpatory and mitigating evidence; (2) the trial court erred in permitting the State to bolster the victim's testimony; and (3) the trial court erred in denying Rogers a requested hearing on his motion for new trial.

We affirm the judgment of the trial court because: (1) Rogers waived any potential *Brady*[3] violation; (2) Rogers failed to preserve the issue of bolstering; and (3) denying Rogers an evidentiary hearing on his motion for new trial was not an abuse of discretion.

*Rogers waived any potential* Brady *violation*

During the testimony of the forensic interviewer, Becky Cunio, it was revealed that Heather had asked her sibling, Karen, another child in Rogers' home, if she had ever been abused,

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]The two children's names in this opinion have been replaced with the pseudonyms Heather and Karen, respectively.

[3]*Brady v. Maryland*, 373 U.S. 83 (1963).

2

but Karen said no. The investigation report on Heather notes that she was unsure of the veracity of Karen's denial. Based upon these implications, Child Protective Services (CPS) had previously conducted a video-recorded risk assessment interview of Karen and determined that no abuse had occurred.

The State had not previously disclosed Karen's video-recorded interview to Rogers.[4] After a recess, copies of the video recording and related documentation were provided to Rogers, and he argued that Karen's denial of abuse was exculpatory and that the new information revealed several potential witnesses that were previously unknown.

In his first point of error on appeal, Rogers contends that the State improperly failed to disclose exculpatory and mitigating evidence.

The State has an affirmative duty under the Due Process Clause to disclose exculpatory or impeachment evidence that is material to guilt or punishment. *See generally United States v. Bagley*, 473 U.S. 667, 676 (1985); *see also Brady*, 373 U.S. at 87; *Thomas v. State*, 841 S.W.2d 399, 407 (Tex. Crim. App. 1992). Favorable evidence is "material" if there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Thomas*, 841 S.W.2d at 404. When the evidence is disclosed during trial, however, the materiality question turns on whether the defendant was prejudiced by the delayed disclosure.

---

[4]It is disputed whether Rogers had prior notice that such an interview and assessment of Karen had occurred.

*Williams v. State*, 995 S.W.2d 754, 761–62 (Tex. App.—San Antonio 1999, no pet.). Furthermore, when previously withheld evidence is disclosed at trial, the defendant has an opportunity to request a continuance. *Id*. at 762. The failure to request a continuance waives any *Brady* violation. *Gutierrez v. State*, 85 S.W.3d 446, 452 (Tex. App.—Austin 2002, pet. ref'd); *Williams*, 995 S.W.2d at 762.

After a copy of the video recording and documentation were provided to Rogers, he argued that Karen's denial of abuse was exculpatory and that the information divulged the names of several potential witnesses. Due to this development, the court recessed for the day at around 3:00 p.m., giving Rogers "until 8:30 in the morning to review all this." The next morning, Rogers' trial counsel reiterated his objection and made an oral motion, and the following exchange took place:

> THE COURT: . . . . I'm trying to see if I understand this motion. You're making a motion for additional time. Is that one of the motions?
>
> [Counsel for Rogers]: No. I'm asking for a mistrial, Your Honor.
>
> THE COURT: Okay. That's what --
>
> [Counsel for Rogers]: I'm asking for the appointment of a special investigator to help find Mr. Mills (sic) and other people.
>
> THE COURT: All right. That motion is denied.
>
> . . . .

THE COURT: Subject to me overruling -- having overruled your motion for a mistrial, are you ready for the jury?

[Counsel for Rogers]: We're ready.

Here, Rogers clearly stated that he was moving for a mistrial, not a continuance. Therefore, assuming arguendo that the State failed to disclose exculpatory or mitigating evidence in violation of *Brady*, Rogers waived any potential violation by failing to request a continuance. *See State v. Fury*, 186 S.W.3d 67, 73–74 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (holding defendant's failure to request continuance indicates tardy disclosure of withheld evidence not prejudicial for purposes of claim of *Brady* violation). We overrule this point of error.

*Rogers failed to preserve the issue of credibility testimony*

In his second point of error, Rogers argues that the trial court erred by allowing Patricia Nicola and Nanette Parras (the Sexual Assault Nurse Examiner (SANE)), to testify about the credibility of Heather's allegations.[5]

The determination of admissibility of evidence is within the sound discretion of the trial court. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *see also Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). A trial court abuses its discretion when its determination is outside the zone of reasonable disagreement. *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005).

---

[5]On appeal, this objection is labeled as "bolstering," though it is properly cited and argued as testimony regarding witness credibility.

"It is generally improper for a witness to offer a direct opinion as to the truthfulness of another witness and such opinion is therefore inadmissible evidence." *Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (citing *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997)). "A direct opinion on the truthfulness of the child" is inadmissible. *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993); *Sessums v. State*, 129 S.W.3d 242, 247 (Tex. App.—Texarkana 2004, pet. ref'd). Although an expert may testify to behaviors and traits that might constitute indicia of manipulation, *Schutz*, 957 S.W.2d at 59, or that a child exhibits behavioral characteristics that have been empirically shown to be common among children who have been abused, *Perez v. State*, 113 S.W.3d 819, 832 (Tex. App.—Austin 2003, pet. ref'd), a direct comment on a complainant's "truthfulness" is "absolutely inadmissible." *Sessums*, 129 S.W.3d at 247. This rule applies to expert and to lay witness testimony. *Fisher v. State*, 121 S.W.3d 38, 41–42 (Tex. App.—San Antonio 2003, pet. ref'd). This type of testimony is inadmissible because it does more than "assist the trier of fact to understand the evidence or to determine a fact in issue"; it decides an issue for the jury. *Yount*, 872 S.W.2d at 709.

After Nicola recounted for the jury her recollection of what Heather told her about the alleged abuse, the State asked whether Nicola believed Heather's accusations against Rogers. Rogers objected on the grounds that "[t]hat's not a question she can answer," "[t]hat's not a proper question," and "[w]hat she believes is way outside the record, and her opinion is not based upon anything and should not be allowed in here . . . ." The trial court overruled Rogers' objections.

The first two objections did not provide the trial court with a reason that it was not a question she could answer or why counsel believed that it was not a proper question to ask; the third rationale seems to center on speculation on the part of the witness. The objection did not center on the question of whether the witness could testify as to her personal opinion as to the veracity of the complainant.

Similarly, after qualifying and establishing Parras as an expert witness, she testified that she performed the sexual assault examination of Heather and listened to the child's account of "what brought [her] into the ER." Rogers contends that the following portion of Parras' testimony on direct examination was inadmissible opinion testimony:

Q     [State]   Based on your training and experience, does [Heather's demeanor and behavior] give you any concern about the history that she told you?

A     [Parras]   Yes, sir.

[Counsel for Rogers]:   Objection, Your Honor.   She's not qualified to answer that.   She's a nurse; she's not a psychologist or anything.

THE COURT:   The Court's going to overrule the objection and find that she is qualified to give that answer.   And she may answer the questions.

Q     [State]   And I'll restate it.
Based on her a [sic] affect, the fact that she was very quiet, she didn't want to talk, she was soft-spoken, she looked down, when you were getting that history, did it give you any concern about what she was telling you?

A     [Parras]   Yes, sir.

Q     And what was that concern?

7

A        You could tell something had happened to this child.  She was reluctant to relay what had happened to her.

Q        And when you say "something," ma'am, what do you mean by that?

A        I believe that she was sexually assaulted.

[Counsel for Rogers]:   Your Honor, I'm going to object again.  She's not qualified to -- what she believes -- I mean, she's here as an expert witness on what she examined.

THE COURT:   Based on her answers to the questions asked by the prosecutor that she's given, I'm going to overrule the objection . . . .

The objection raised here is murky.   When Rogers' counsel uttered "what she believes," it makes one wonder if he was intending to lodge an objection to Parras' qualifications to render an expert's opinion or whether the nature of the objection was that she was rendering an opinion of her belief in the truthfulness of the child (i.e., the credibility of the complainant).   Given the objection as voiced, the trial court would be reduced to speculation as to its nature and its basis.

In order to preserve a complaint or objection for appellate review, the record must reflect that it was brought to the attention of a trial court in accord with applicable rules by a timely request, objection, or motion which specifically sets out the nature of the complaint in a sufficiently comprehensible manner that it informs the trial court of its nature and basis and obtained either an adverse ruling or a refusal to rule.   TEX. R. APP. P. 33.1(a).   Accordingly, we overrule this point of error.

*Denying Rogers an evidentiary hearing on his motion for new trial was not an abuse of discretion*

In his final point of error, Rogers argues that the trial court erroneously denied[6] him an evidentiary hearing on his motion for new trial. He contends that the motion alleged facts outside the record that if true, entitled him to relief.

We review a trial court's denial of a hearing on a motion for new trial under an abuse of discretion standard, in which we reverse only if the decision was so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010); *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). Absent such an abuse of discretion, an appellate court is not justified in reversing the trial court's judgment. *Gonzales*, 304 S.W.3d at 842; *Smith*, 286 S.W.3d at 339.

Yet, a hearing on a motion for new trial is mandatory if the motion raises reasonable issues that cannot be determined from the record. *Martinez v. State*, 74 S.W.3d 19, 21 (Tex. Crim. App. 2002); *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993); *Thomas v. State*, 286 S.W.3d 109, 115 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (hearing required on motion for new trial asserting "that trial counsel was ineffective in not advising him regarding whether to agree to a mistrial in his first trial and for not calling as a witness a family member who he claims was the only eyewitness, which allowed the prosecutor to argue that appellant had no family members who

---

[6]The motion was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c).

9

would support him at trial") (citing *Stogiera v. State*, 191 S.W.3d 194, 200 (Tex. App.—San Antonio 2005, no pet.)).   Such a review

> is limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief.   This is because the trial judge's discretion extends only to deciding whether these two requirements are satisfied.   If the trial judge finds that the defendant has met the criteria, he has no discretion to withhold a hearing.   In fact, under such circumstances the trial judge abuses his discretion in failing to hold a hearing.

*Smith*, 286 S.W.3d at 340.

In support of his motion for new trial and request for a hearing, Rogers relies on an affidavit from one of the jurors who sat in his case.   The affidavit stated that during the trial, it became evident to the juror/affiant that "Rogers was in custody, a fact likely evident to other jurors as well."   The affidavit went on to assert that another juror had told him that "her mind had been made up from the first time that she saw Mr. Rogers."   Rogers' argument that the content of the affidavit is confounded by Rule 606(b) of the Texas Rules of Evidence, which states:

> **Inquiry Into Validity of Verdict or Indictment.**   Upon an inquiry into the validity of a verdict or indictment, *a juror may not testify as to any matter or statement occurring during the jury's deliberations*, *or to the effect of anything on any juror's mind or emotions or mental processes*, *as influencing any juror's assent to or dissent from the verdict or indictment.*   Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify:   (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

10

TEX. R. EVID. 606 (emphasis added).   Although the affidavit upon which Rogers bases his motion for new trial raises issues clearly outside the record, it is clearly reliant on the fact that the juror had become aware that Rogers was in custody[7] and on the assertion that another juror had told the affiant that her decision was based upon Rogers' appearance.   In both instances, such evidence patently attempts to explore the impact of certain things on jurors' minds, emotions, or mental processes which influenced those jurors in arriving at the jury's verdict.   As such, it is not competent evidence, specifically barred by Rule 606.   Since this was the sole evidentiary basis for Rogers' motion for new trial, the trial court was within its discretion to deny an evidentiary hearing on that motion.   Accordingly, we overrule this point of error.

We affirm the judgment.


                                        Bailey C. Moseley
                                        Justice

Date Submitted:      June 23, 2011
Date Decided:        August 18, 2011

Do Not Publish

---

[7]One must infer that Rogers believes that the knowledge by jurors that Rogers was in custody had some fatally deleterious impact on the jurors' ability to impartially determine his guilt.