

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00025-CR

ANTHONY LEE HARDEMAN                                     APPELLANT

V.

THE STATE OF TEXAS                                            STATE

----------

### FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Anthony Lee Hardeman appeals his sentence of sixty years' incarceration stemming from a jury's verdict finding him guilty of murder. Asking this court to remand for a new punishment phase of trial and citing violations of due process, in one point Hardeman asserts that the State committed multiple

---

[1]*See* Tex. R. App. P. 47.4.

*Brady* violations; that the prosecutor committed prosecutorial misconduct; and that the trial court erred by excluding testimony. We will affirm.

## II. BACKGROUND

This appeal involves only the punishment phase of Hardeman's trial. After a jury returned a verdict of guilty for murder, Hardeman's trial proceeded to the punishment phase. At the punishment hearing and before a jury, the State introduced testimony from David Yonts, a detention officer for the Wichita County Jail, where Hardeman was held after he was arrested for the charges underlying this case. Yonts testified about an alleged fight between Hardeman and a fellow inmate and events that resulted in Hardeman having kicked Yonts in the head as Yonts attempted to break up the fight. During this line of questioning, defense counsel objected and asked that the trial court conduct a bench hearing outside the presence of the jury to determine whether the State could prove beyond a reasonable doubt that Hardeman had in fact assaulted Yonts. After a brief bench conference, defense counsel stated, "Judge, that's fine. We can bring the Jury back in."

The State also introduced the testimony of Andrew Tucker, another detention officer for the Wichita County Jail. Tucker testified to the contents of a videotape that allegedly showed the fight between Hardeman and his fellow inmate. As Tucker testified, defense counsel objected:

> Judge, I'd object to this witness testifying about what's on a video that he -- that he didn't personally see them, so he can't say that the video accurately recorded them. Secondly, the video is gone, it's the

2

best evidence and what he's trying to say is something -- Judge, without the video, it also violates our 6th Amendment right to confront and cross-examine this witness, so I would object on all of those grounds to him testifying about what he saw on the video.

The trial court overruled the objection, and Tucker testified to what he remembered seeing on the video.

Hardeman also testified at the punishment hearing. During cross-examination, the State asked him questions about his involvement in an Oklahoma drive-by shooting that occurred when he was a juvenile. During the State's cross-examination, the trial court called for a recess until the next day. When the State began to cross-examine Hardeman again, the State once more asked Hardeman about the drive-by shooting. The State then tried to impeach Hardeman using a police report related to the Oklahoma drive-by shooting. Defense counsel objected that he had not been given a copy of the police report before trial. The trial court sustained the objection and instructed the jury to disregard "the last line of questioning." The jury sentenced Hardeman to sixty years' incarceration. This appeal followed.

## III. DISCUSSION

### A. Alleged *Brady* Violations

In part of his sole point, Hardeman alleges that his due process rights were violated because the State committed *Brady* violations whenever it introduced evidence at the punishment phase regarding Hardeman having allegedly fought with a fellow inmate and having allegedly assaulted a detention officer. *Brady v.*

*Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). Hardeman further argues that the State committed a *Brady* violation when it allegedly did not disclose prior to the punishment phase that the videotape of the alleged fight had been deleted.[2] We will assume without deciding that these alleged failures constitute *Brady* violations. We conclude, however, that Hardeman has failed to preserve these complaints for our review.

The State has an affirmative duty under the due process clause to disclose exculpatory or impeachment evidence that is material to guilt or punishment. *See generally United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 3379 (1985); *see also Brady*, 373 U.S. at 87, 83 S. Ct. at 1196–97; *Thomas v. State*, 841 S.W.2d 399, 407 (Tex. Crim. App. 1992). Favorable evidence is "material" if there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Thomas*, 841 S.W.2d at 404. When the evidence is disclosed during trial, however, the materiality question turns on whether the defendant was prejudiced by the delayed disclosure. *Williams v. State*, 995 S.W.2d 754, 761–62 (Tex. App.—San Antonio

---

[2]At the punishment phase of trial, Hardeman objected to Tucker testifying to the contents of the video by raising confrontation and best evidence rule complaints. On appeal, although citing these objections in his brief, Hardeman does not argue these same issues nor does he cite to any authority pertaining to the confrontation clause or the best evidence rule. Hardeman's complaint on appeal is that the State not disclosing to him the unavailability of the video was a *Brady* violation: "Again the State did not comply with its [*Brady*] obligation and notify [Hardeman] that it did not have the videotape."

1999, no pet.). Furthermore, when previously withheld evidence is disclosed at trial, the defendant has an opportunity to request a continuance. *Id.* As a general rule, the failure to request a continuance waives any *Brady* violation. *Gutierrez v. State*, 85 S.W.3d 446, 452 (Tex. App—Austin 2002, pet. ref'd); *Williams*, 995 S.W.2d at 761–62.

In the instant case, Hardeman failed to request a continuance at any time after the State introduced testimony regarding the alleged fight between Hardeman and a fellow inmate or when the State put on evidence regarding the alleged assault on the detention officer. Furthermore, Hardeman did not request a continuance whenever the State introduced testimony regarding the contents of the videotape. Therefore, assuming *arguendo* that the State failed to disclose evidence in violation of *Brady*, Hardeman waived any potential *Brady* violation by failing to request a continuance. *See State v. Fury*, 186 S.W.3d 67, 73–4 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (holding that defendant's failure to request a continuance indicates that tardy disclosure of withheld evidence was not prejudicial for purposes of claim of *Brady* violation.) We overrule this portion of Hardeman's sole point.

## B. Threshold Determination of Extraneous Offenses

In part of his sole point, Hardeman argues that the trial court erred by failing to conduct a preliminary hearing to determine whether the State could prove beyond a reasonable doubt the extraneous offenses that he engaged in a fight with a fellow inmate and that he assaulted a detention officer.

We review a trial court's decision to admit an extraneous offense during the punishment phase under the abuse of discretion standard. *Mitchell v. State*, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). During the punishment phase, the State may offer evidence as to any matter the court deems relevant to sentencing, including evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2010). When presented with an appropriate objection, the trial court has the responsibility to determine the threshold issue of whether an extraneous offense is relevant. *See Mitchell*, 931 S.W.2d at 953–54; *Mann v. State*, 13 S.W.3d 89, 94 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001). Then the jury, as the exclusive judge of the facts, is to determine whether or not the State has proved the extraneous offenses beyond a reasonable doubt, and they should be so instructed when requested. *Mitchell*, 931 S.W.2d at 954.

The trial court satisfies its responsibility by making an initial determination that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense. *Mann*, 13 S.W.3d at 94; *see Mitchell*, 931 S.W.2d at 954. This threshold determination is not a finding by the court that the State has proved an extraneous bad act beyond a reasonable doubt, but it is instead a finding that sufficient evidence exists from which a jury could reasonably so find. *See Mann*, 13 S.W.3d at 94.

Hardeman did not object to the State's introduction of evidence concerning the alleged fight with his fellow inmate. Thus, he failed to inform the trial court that he desired the trial court to determine the threshold issue of relevancy to this alleged offense and failed to preserve for appeal any alleged error. *See Mitchell*, 931 S.W.2d at 953–54. But Hardeman did request a bench conference regarding the admissibility of evidence concerning his alleged assault on the detention officer. Significant to this preserved issue and counter to Hardeman's assertion, there is no requirement that the initial determination be made by the court following a hearing as opposed to some other form of preliminary review. *Mann*, 13 S.W.3d at 94. The trial court may determine through an oral or written proffer of evidence, motions, pretrial hearings, and the trial, including any bench conferences, whether there is sufficient evidence. *See Mann*, 13 S.W.3d at 93–95 (holding that the prosecutor's statement that he intended to offer extraneous offense evidence through defendant's ex-wife, who would testify as to some physical abuse by defendant, was sufficient for purposes of making a threshold determination of relevance); *Welch v. State*, 993 S.W.2d 690, 697 (Tex. App—San Antonio 1999, no pet.) (holding that the State's written proffer of how it would prove the defendant sexually assaulted four other victims was sufficient for purposes of trial court's threshold determination of relevance).

Here, the prosecutor's oral statement to the trial judge, outside the presence of the jury, that he intended to prove the assault through testimony by the detention officer was sufficient for the trial court to make an initial

7

determination of relevance. *See Mann*, 13 S.W.3d at 93–95. Accordingly, Hardeman's complaints concerning the trial court's not having held a hearing regarding the extraneous offenses are without merit. We overrule this portion of Hardeman's sole point.

## C.    Exclusion of Portions of Hardeman's Testimony

In part of his sole point, Hardeman next asserts that the trial court erred by excluding his own testimony whereby Hardeman attempted to state what the victim had told him throughout the events leading up to the murder. We disagree.

We review a trial court's decision to exclude evidence under an abuse of discretion standard, and we must therefore affirm the trial court's decision unless it is beyond the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200, 117 S. Ct. 1561 (1997).

To preserve error in a trial court's exclusion of evidence, the substance of the excluded evidence must be shown by an offer of proof unless it is apparent from the context of the questions asked. Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.2; *Chambers v. State*, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993), *cert. denied*, 511 U.S. 1100, 114 S. Ct. 1871 (1994); *Fairow v. State*, 943 S.W.2d 895, 897 n.2 (Tex. Crim. App. 1997). The purpose of the offer of proof is to show what the witness's testimony would have been—otherwise, there is nothing before the appellate court to show reversible error in the trial court's ruling. *Stewart v.*

8

*State*, 686 S.W.2d 118, 122 (Tex. Crim. App. 1984), *cert. denied*, 474 U.S. 866, 106 S. Ct. 190 (1985); *see Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999), *cert. denied*, 531 U.S. 837, 121 S Ct. 98 (2000). Error may be preserved by an offer of proof in question-and-answer form or in the form of a concise statement by counsel. Tex. R. Evid. 103(b); *Love v. State*, 861 S.W.2d 899, 901 (Tex. Crim. App. 1993). Counsel's concise statement must include a summary of the proposed testimony. *Love*, 861 S.W.2d at 901. Error is not preserved if the offer of proof is inadequate. *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998).

At the punishment phase of trial, a lengthy exchange took place between defense counsel and Hardeman regarding Hardeman's relationship with the victim. During this exchange, the State, citing hearsay, objected to several portions of Hardeman's testimony. Defense counsel contended that the statements were important to show Hardeman's state of mind at the time of the murder. Each time the trial court sustained the State's hearsay objection. But Hardeman never submitted a formal offer of proof indicating what Hardeman intended to testify to. Because nothing in the record indicates the contents of Hardeman's intended testimony, the substance of the excluded testimony cannot be determined. Therefore, Hardeman failed to preserve error. *See Stewart*, 686 S.W.2d at 122. We therefore overrule this portion of Hardeman's sole point.

**D.  State's Use of Allegedly Undisclosed Police Report**

In the remainder of his sole point, Hardeman argues that the "State engaged in prosecutorial misconduct by violating its open file policy, by failing to disclose that they had obtained a copy of an Oklahoma police report in the middle of the trial[,] and by using a document for cross-examination that it could have obtained and disclosed to the defense well prior to trial."  Hardeman's complaint is based upon the State's attempt to impeach Hardeman's own testimony regarding his alleged involvement in a drive-by shooting that occurred in Oklahoma a few years prior to trial.  After the State attempted to question Hardeman about the contents of the Oklahoma police report, Hardeman objected, the trial court sustained the objection, and the trial court instructed the jury: "The Jury is instructed to disregard the last line of questioning.  It will be about the last six or seven questions, I believe."  Hardeman then moved for a mistrial, and the trial court denied his motion.

The State counters, among other arguments, that the trial court sustained Hardeman's objection to the introduction of the police report and any questioning regarding it, and that the trial court instructed the jury to disregard the line of questioning pertaining to the drive-by.  Thus, the State argues that we as a reviewing court are to presume that the jury followed the trial court's instruction and that the trial court did not abuse its discretion by denying Hardeman's motion for mistrial.

10

We review the trial court's denial of a motion for mistrial under an abuse of discretion standard. *Russeau v. State*, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926, 126 S. Ct. 2982 (2006); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070, 120 S. Ct. 1680 (2000). The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case. *Ladd*, 3 S.W.3d at 567; *Hernandez v. State*, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990), *cert. denied*, 500 U.S. 960, 111 S. Ct. 2275 (1991).

A motion for mistrial will be granted only in "extreme circumstances, where the prejudice is incurable." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *see Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). Generally, a prompt instruction to disregard will cure error associated with an improper question and answer. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). Further, we are to presume the jury will follow the court's instructions. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). In considering whether an instruction is sufficient to cure error, courts consider whether the reference was direct or implied, intentional or inadvertent, detailed or vague, and whether the topic was pursued once the instruction was given. *Kipp v. State*, 876 S.W.2d 330, 339 (Tex. Crim. App. 1994); *Waldo v. State*, 746 S.W.2d 750, 752 (Tex. Crim. App. 1988).

In this case, the trial court promptly instructed the jury to disregard the complained-of line of questioning, and we presume that the jury followed that

instruction.  *See Colburn*, 966 S.W.2d at 520.  After the trial court instructed the jury to disregard the line of questioning, the State did not refer to it again, did not attempt to highlight this testimony, and did not make any use of it at all.  We conclude that the trial court's instruction to the jury cured any potential error.  Thus, we overrule this remaining portion of Hardeman's sole issue.

## IV. CONCLUSION

Having overruled Hardeman's sole point in its entirety, we affirm the trial court's judgment.


BILL MEIER
JUSTICE

PANEL:  GARDNER, WALKER, and MEIER, JJ.

WALKER, J. concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 19, 2011