

# IN THE
# TENTH COURT OF APPEALS

## No. 10-17-00394-CR

**BRODNIEY CHARLES RAY,**

 **Appellant**

 **v.**

**THE STATE OF TEXAS,**

 **Appellee**

**From the 85th District Court
Brazos County, Texas
Trial Court No. 16-01478-CRF-85**

## MEMORANDUM OPINION

In four issues, appellant, Brodniey Charles Ray, challenges his convictions for two

counts of aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011).

Specifically, Brodniey contends that: (1) the evidence supporting his convictions is

insufficient; (2) the trial court abused its discretion by denying his motions for mistrial;

and (3) he was deprived of his right to a fair trial and to present a full defense because

the State purportedly withheld exculpatory evidence of three alternate suspects. Because

we overrule all of Brodniey's issues on appeal, we affirm.

## I.    SUFFICIENCY OF THE EVIDENCE

In his first issue, Brodniey argues that the evidence supporting his convictions is

insufficient because the State failed to prove that: (1) he was present during the

commission of the offense in this case; (2) the weapon allegedly exhibited was a firearm;

(3) anyone was in fear of imminent bodily injury or death; and (4) property was stolen.

We disagree.

## A.    Standard of Review

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of

Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a
> conviction, a reviewing court must consider all of the evidence in the light
> most favorable to the verdict and determine whether, based on that
> evidence and reasonable inferences therefrom, a rational fact finder could
> have found the essential elements of the crime beyond a reasonable doubt.
> *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979);
> *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar
> standard gives full play to the responsibility of the trier of fact fairly to
> resolve conflicts in the testimony, to weigh the evidence, and to draw
> reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at
> 319. "Each fact need not point directly and independently to the guilt of
> the appellant, as long as the cumulative force of all the incriminating
> circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d
> at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

Under a hypothetically-correct jury charge, a person commits aggravated robbery "if he commits robbery . . . and he . . . uses or exhibits a deadly weapon . . . ." Tex. Penal

CODE ANN. § 29.03. A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02 (West 2011). A deadly weapon is anything that, in the manner of its use or intended use, is capable of causing death or serious bodily injury. *Id.* § 1.07(a)(17)(B) (West Supp. 2017); *see Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017) ("A deadly weapon is defined as a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." (internal citations & quotations omitted)).

Though he challenges the other elements for aggravated robbery, Brodniey's chief argument in this issue involves the identity element. The State is required to prove beyond a reasonable doubt that the accused is the person who committed the charged crime. *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd) (citing *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Rice v. State*, 801 S.W.2d 16, 17 (Tex. App.—Fort Worth 1990, pet. ref'd)). Identity may be proved by direct or circumstantial evidence. *Id.* (citing *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd); *Creech v. State*, 718 S.W.2d 89, 90 (Tex. App.—El Paso 1986, no pet.)). "In fact, identity may be proven by inferences." *Id.* (citing *United States v. Quimby*, 636 F.2d 86, 90 (5th Cir. 1981));

*see Clark v. State*, 47 S.W.3d 211, 214 (Tex. App.—Beaumont 2001, no pet.); *see also Jones v. State*, 900 S.W.2d 392, 399 (Tex. App.—San Antonio 1995, pet. ref'd) (explaining that the jury may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life when giving effect to inferences that may reasonably be drawn from evidence).

## B.     Discussion

Here, Brodniey was charged by indictment with two counts of aggravated robbery, one for each victim—Francisca Balandra-Ortega and Yazmin Roman-Arroyo. At 2:52 P.M. on the day in question, Officer Jarrett Williams of the Bryan Police Department responded to a call involving an aggravated robbery at the Safenet Insurance Company trailer located at 1204 West William Joel Bryan Parkway in Brazos County, Texas. Upon arriving, Officer Williams was informed by Francisca and Yazmin, both employees of Safenet, that two African-American males had pointed a pistol at them. According to Francisca, one of the robbers yelled that he only wanted money. While pointing a pistol, one of the robbers told Francisca that she needed to get on her knees and put her face on the ground. Yazmin recalled that she was also forced to the ground at gunpoint. Both women testified that they felt afraid and scared during the robbery. The two women further testified that the robbers went directly to a black filing cabinet in the corner of the trailer where the company kept the money. Yazmin also noted that one of the robbers rummaged through her desk for money. As a result of the robbery, Francisca's purse and

other belongings, including an LG cell phone and cash, were stolen. Yazmin's iPhone 6 and white Michael Kors purse were also stolen. Inside Yazmin's purse was a deposit bag with cash from the day's transactions. While investigating, Officer Williams found on the floor of the Safenet trailer a 9-millimeter magazine that Yazmin had seen come out of one of the robbers' guns during the robbery. Officer Williams emphasized that the magazine was from a real gun, not a BB gun.

With regard to the description of the assailants, Francisca told Officer Williams that she observed one of the males wearing a hoodie with some type of white substance on his face. Yazmin stated that she knew both robbers were African-American because she could see their necks. Additionally, she recalled one of the robbers wore gloves; both robbers wore gray hoodies; and one of the robbers had a white towel covering his face, and the other robber had white paint covering his face. The descriptions of the robbers provided by Francisca and Yazmin matched the descriptions provided by a nearby eyewitness, Vance Castillo.

Castillo testified that he was near the Safenet trailer and that he observed, from about twenty yards away, two individuals running away from the trailer. He noted that the two men were African-American and that they wore masks, gloves, and long sleeves. Castillo also heard yelling and saw one of the men carrying what looked like a white-colored bag that seemed to match the color of Yazmin's purse that was stolen. According to Castillo, the two individuals then got into a silver Ford Fusion with bulky, chrome

rims, a missing center cap on one rim, and tinted windows. When shown a photographic lineup, Castillo was sixty percent sure that Brodniey was one of the suspects.

Other evidence presented at trial included testimony that Brodniey's sister, Quintesha Ray, drove a silver Ford Fusion in September 2015 and that Brodniey was driving Quintesha's Ford Fusion on the day of the robbery. Additionally, the evidence established that Brodniey had visited the Safenet trailer earlier in the day with Quintesha, so that Quintesha could pay her insurance bill. Quintesha paid in cash while Brodniey sat next to her. Brodniey observed Yazmin place the cash in her bottom desk drawer.[1]

Furthermore, records from Brodniey's cell phone, as well as his ankle monitor, placed him near the location of the Safenet trailer during the time of the robbery. Brodniey's ankle monitor showed that he left Quintesha's house at 2:29 P.M. on the day in question; that he was more than 150 feet away from Quintesha's house between 2:29 P.M. and 5:50 P.M.; and that Brodniey returned to Quintesha's house at 5:50 P.M. Moreover, Brodniey's cell phone records demonstrated that he: (1) made a phone call to Safenet using caller-ID restriction at 1:46 P.M., and this phone call bounced off the west side of the Waco Street tower; and (2) made another phone call at 3:04 P.M. that bounced off the west side of the Waco Street tower. This information placed Brodniey's cell phone near the Safenet trailer at the time of the robbery.

---

[1] Prior to closing the trailer that day, Yazmin moved the cash from her bottom desk drawer for safekeeping.

The State also proffered additional "pinging" evidence regarding cell phones. Brodniey received a phone call at 3:39 P.M. that bounced off the Smetana Road tower, and he made a phone call after the robbery at 4:16 P.M. that bounced off the beta face of the Smetana Road tower. "Pinging" from Yazmin's stolen cell phone showed that, at 4:11 P.M. and at 4:25 P.M., the cell phone was located at 2107 Silver Hill Road. Sergeant Steven Fry of the Bryan Police Department noted that the Smetana Road tower falls between Highway 21 and Highway 47 off of Silver Hill Road. Or, in other words, the "pinging" evidence showed that Brodniey's cell phone was located near Yazmin's stolen cell phone. And finally, Quintesha admitted telling police that no one else would have used Brodniey's cell phone.

Viewing the evidence in the light most favorable to the verdict, the jury could rationally conclude that Brodniey participated in the aggravated robbery of the Safenet trailer that involved the use of deadly weapons, firearms, that caused Francisca and Yazmin to be fearful of serious bodily injury and resulted in the theft of cash, cell phones, and other belongings. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(17), 29.03; *see also Johnson*, 509 S.W.3d at 322 (noting that a firearm is a deadly weapon); *Pitte v. State*, 102 S.W.3d 786, 793 (Tex. App.—Texarkana 2003, no pet.) ("It is sufficient to constitute robbery if the accused places the complainant in fear of bodily injury or death to the degree that reason and common experience will likely induce the complainant to part with his property against his will." (internal quotations omitted)). In other words, based on the cumulative

force of all the evidence when viewed in the light most favorable to the verdict, we conclude that the evidence is sufficient to support Brodniey's convictions for aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03; *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2781; *Hooper*, 214 S.W.3d at 16-17. And to the extent that the evidence supports conflicting inferences, we must presume that the jury resolved the conflicts in favor of the prosecution and therefore defer to that determination.[2] *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Accordingly, we overrule Brodniey's first issue.

## II.    BRODNIEY'S FIRST MOTION FOR MISTRIAL

In his second issue, Brodniey asserts that the trial court abused its discretion by denying his first motion for mistrial. In particular, Brodniey argues that the State was permitted to elicit evidence against him before a witness, Dwanteria Cross, asserted his Fifth Amendment privilege and that the admission of this evidence deprived Brodniey of his right to confront and cross-examine witnesses and his due process right to a fair trial.

### A.    Applicable Law

---

[2] In particular, Brodniey offered the testimony of Bennie Ray Hawkins, who stated that Brodniey had come over to his house to eat barbecue and watch Aggie football on the afternoon of the robbery. However, Hendrick Patterson, Brodniey's half-brother, recounted that he attended the same barbecue get-together that Hawkins referenced and that the get-together involved watching a Dallas Cowboys football game, which took place on the day after the robbery—Sunday. Nevertheless, this conflict in the evidence was for the jury to resolve. *See Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781,2793, 61 L. Ed. 2d 560 (1979)

We review the denial of a motion for mistrial under an abuse-of-discretion standard. *Archie v. State*, 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007). Under this standard, we uphold the trial court's ruling as long as the ruling is within the zone of reasonable disagreement. *Id.* "'A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000) (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). It is appropriate only for "a narrow class of highly prejudicial and incurable errors." *Id.*; *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Therefore, a trial court properly exercises its discretion to declare a mistrial when, due to the error, "an impartial verdict cannot be reached" or a conviction would have to be reversed on appeal due to "an obvious procedural error." *Wood*, 18 S.W.3d at 648; *see Ladd*, 3 S.W.3d at 567.

**B.    Discussion**

Here, Brodniey complains about the testimony of Cross, who provided some testimony and then invoked his Fifth Amendment privilege. Prior to invoking the Fifth Amendment, Cross testified about statements Brodniey made regarding the aggravated robbery at Safenet Insurance. Specifically, Cross stated the following:

> Q [The State]:     Okay. And during that—during that time when detectives were talking to you in the case, do you remember them asking you about an aggravated robbery involving Brodniey Ray?
>
> A [Cross]:     Yeah.

Q:            And you remember telling them that he had talked to you about that aggravated robbery?

A:            Yes, but I lied.

Q:            Okay.  So all of those things that you said in that audio were a lie?

A:            Yes.

Q:            Okay.  So do you remember saying that Brodniey told you "he said it was some Mexican dude that pointed him out and said he didn't have a mask on or something."

. . .

A:            Brodniey never told me that.

Q:            Okay.  So when you told them that, you were lying?

A:            Yes.  I heard it from the streets.

Later, the following exchange occurred:

Q [The State]:      Mr. Cross, earlier when I was asking you a question, I was talking to you about a recording that you had listened to twice.  And I was asking you if you—if you stated on there—or did you tell—did you tell those two detectives, quote, "He—" he being Brodniey Ray, "He told me he did it but he was saying that nobody had evidence on it.  So that's really what we're talking about the whole time.  He was like 'man, bro, they ain't got no evidence on me.'  And I was, like, 'man, did you do it?'"

. . .

A [Cross]:      Plead the Fifth.

After being admonished by the trial court, Cross continued to refuse to answer questions, relying upon the Fifth Amendment. Believing that Cross was not entitled to invoke the Fifth Amendment privilege against self-incrimination because Cross was not criminally liable in this matter, the trial court held Cross in contempt and sentenced him to six months in jail with a $500 fine. At this point, Brodniey objected that he did not have an opportunity to cross-examine Cross, made a motion to strike Cross's testimony, and moved for a mistrial. The trial court sustained Brodniey's objection, instructed the jury to disregard any testimony from Cross, and denied Brodniey's motion for mistrial.

Regardless of the propriety of Cross's assertion of his Fifth Amendment privilege, we conclude that any prejudice associated with Cross's testimony prior to the assertion of his Fifth Amendment privilege was cured. As noted above, the trial court sustained Brodniey's objection and instructed the jury to disregard any testimony from Cross. This Court has noted that, in most instances, an instruction to disregard will cure any prejudicial effect. *Pierce v. State*, 234 S.W.3d 265, 268 (Tex. App.—Waco 2007, pet. ref'd) (citing *Wesbrook v. State*, 29 S.W.3d 103, 115-16 (Tex. Crim. App. 2000)). Furthermore, "[a]n instruction to disregard is presumptively inadequate only in the most blatant cases; only offensive or flagrantly improper conduct warrants reversal when there has been an instruction to disregard." *Id.* (citing *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994)).

In the instant case, the complained-of evidence is not of such a nature that the trial court's curative instruction was inadequate, especially considering that: (1) jurors are presumed to follow the instructions of the trial court; (2) a "mistrial is an extreme remedy which is appropriate only when the objectionable event is so emotionally inflammatory that a curative instruction is not likely to prevent the jury from being unfairly prejudiced against the defendant"; and (3) Brodniey has not directed us to any evidence in the record demonstrating that the jury failed to follow the trial court's instructions. *Lusk v. State*, 82 S.W.3d 57, 60-61 (Tex. App.—Amarillo 2002, pet. ref'd); *see Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005) ("On appeal, we generally presume the jury follows the trial court's instructions in the manner presented." (internal citations omitted)). Accordingly, we cannot say that the trial court abused its discretion by denying Brodniey's motion for mistrial. *See Archie*, 221 S.W.3d at 699-700. We overrule Brodniey's second issue.

### III. EXCULPATORY EVIDENCE & BRODNIEY'S SECOND MOTION FOR MISTRIAL

In his third and fourth issues, Brodniey contends that he was deprived of his right to a fair trial and his right to present a full defense because the State withheld exculpatory evidence of three alternate suspects until the middle of trial in violation of *Brady v. Maryland* and article 39.14 of the Code of Criminal Procedure. *See* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *see also* TEX. CODE CRIM. PROC. ANN. art. 39.14 (West 2018). Brodniey further argues that the trial court abused its discretion by denying his second motion for mistrial based on the withholding of the purportedly exculpatory evidence.

In these issues, Brodniey complains about a report that Bryan Police Officer Aaron Arms filed on September 19, 2015, which indicated that, while investigating the robbery in this case, Officer Arms saw three African-American males "a couple of blocks" from where the robbery took place and was told by a citizen that one of the males had thrown a Ruger BB gun under a vehicle. The three males were identified by name, and the report states that one of the males was on bond for "several aggravated robberies." Attached to the report was a photograph of the Ruger BB gun. However, after determining that the ditched gun was a BB gun with the magazine still in it, Officer Arms released the three males. Brodniey asserts on appeal that the State improperly withheld this report by waiting to produce the report until the third day of trial. In making this argument, Brodniey alleges that the State violated both *Brady* and article 39.14 of the Code of Criminal Procedure.

The State has an affirmative duty under the Due Process Clause of the United States Constitution to disclose exculpatory or impeachment evidence that is material to guilt. *See United States v. Bagley*, 473 U.S. 667, 677, 105 S. Ct. 3375, 3381, 87 L. Ed. 2d 481 (1985); *see also Brady*, 373 U.S. at 87, 83 S. Ct. at 1196-97; *Thomas v. State*, 841 S.W.2d 399, 407 (Tex. Crim. App. 1992). The Court of Criminal Appeals has noted that favorable evidence is "material" if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense. *Thomas*, 841 S.W.2d at 404.

Likewise, under article 39.14(h), the State must "disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." TEX. CODE CRIM. PROC. ANN. art. 39.14(h). When the complained-of evidence is disclosed during trial, as is the case here, the question turns on whether the defendant was prejudiced by the delayed disclosure. *See Williams v. State*, 995 S.W.2d 754, 761-62 (Tex. App.—San Antonio 1999, no pet.); *see also Painter v. State*, No. 11-15-00318-CR, 2017 Tex. App. LEXIS 11935, at **19-20 (Tex. App.—Eastland Dec. 21, 2017, pet. ref'd) (mem. op., not designated for publication).

> Furthermore, when previously withheld evidence is disclosed at trial, the defendant has an opportunity to request a continuance. [*Williams*, 995 S.W.2d] at 762. A defendant's failure to request a continuance waives any *Brady* violation. *Young v. State*, 183 S.W.3d 699, 706 (Tex. App.—Tyler 2005, pet. ref'd); *Gutierrez v. State*, 85 S.W.3d 446, 452 (Tex. App.—Austin 2002, pet. ref'd); *Williams*, 995 S.W.2d at 762. Likewise, a defendant's failure to request a continuance also waives any violation under Article 39.14(h). *See O'Kane v. State*, No. 04-16-00526-CR, 2017 Tex. App. LEXIS 6927, 2017 WL 3159462, at *3 (Tex. App.—San Antonio July 26, 2017, no pet.) (mem. op., not designated for publication) ("By failing to file a written, sworn motion for continuance, [the defendant] failed to preserve error" based on the State's failure to comply with Article 39.14(h)."); *see also Prince v. State*, 499 S.W.3d 116, 120-21 (Tex. App.—San Antonio 2016, no pet.) (same).

*Painter*, 2017 Tex. App. LEXIS 11935, at *20.

In the trial court, Brodniey failed to request a continuance in response to the State's proffer of Officer Arms's report. Therefore, even if we assume without deciding that the

State had a duty to disclose the challenged evidence, Brodniey waived any violation of *Brady* or article 39.14(h) by failing to request a continuance. *See Prince*, 499 S.W.3d at 120-21; *see also Painter*, 2017 Tex. App. LEXIS 11935, at *20; *O'Kane*, 2017 Tex. App. LEXIS 6927, at *8. Accordingly, we overrule Brodniey's third and fourth issues.

## IV. CONCLUSION

Having overruled all of Brodniey's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
(Chief Justice Gray concurring)
Affirmed
Opinion delivered and filed October 10, 2018
Do not publish
[CRPM]

